ORIGINAL

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

LEONID LAUTMAN,                                          )
                                                         )
                         Plaintiff,                      )
                                                         )
            vs.                                          ) Civil Case No.:
                                                         )
2800 COYLE ST. OWNERS CORP.; BOARD OF DIRECTORS          )
OF THE 2800 COYLE ST. OWNERS CORP.; SVETLANA             )
MARMER, ALLA SHVARTS, PERSONALLY, AND AS                 )
DIRECTORS AND OFFICERS OF 2800 COYLE ST. OWNERS          )          COMPLAINT
CORP.; SAUCHIK LAW GROUP, P.C., ALEC SAUCHIK, ESQ.,      )             AND
STEVE POLYAKOV, ESQ. IN THEIR PROFESSIONAL AND           )          JURY DEMAND
PERSONAL CAPACITIES,                                     )
                                                         )
                         Defendants.                     )
                                                         )

ROSS, J.

        Plaintiff, Leonid Lautman, appearing pro se, complaining of the Defendants, respectfully

shows to this Court and alleges upon knowledge as to his own facts and upon information and

belief as to all other matters:

## INTRODUCTION

        1.      This is the case of the multiple extreme violations of the Fair Debt Collection

Practices Act (FDCPA) 15 U.S.C. § 1692 et. seq. perpetrated by the Defendants, cooperative

landlord 2800 Coyle St. Owners Corp., its board of directors, and its officers and attorneys,

against Plaintiff, its tenant-shareholder.

        2.      The factual allegations presented herein of the unlawful nonpayment proceeding

maliciously instituted by the cooperative landlord and its attorneys, Sauchik Law Group P.C.

against Plaintiff are depressingly similar to the factual allegations by the aggrieved tenants of the

subsidized housing projects, recited by this Court in Travieso v Gutman, Mintz, Baker &

Sonnenfeldt, P.C., 1995 WL 704778, 1995 U.S. Dist. Lexis 17804 (E.D.N.Y. Decided Nov. 16,

1995).

RECEIVED
MAR 21 2014
PRO SE OFFICE

## JURISDICTION AND VENUE

3.    This Court has jurisdiction over Plaintiff's federal claims pursuant to 28 U.S.C. §

1331, 15 U.S.C. § 1692k(d) and 18 U.S.C. §§ 1961-68, and supplemental jurisdiction over the

state law claims pursuant to 28 U.S.C. § 1367. Declaratory relief is available pursuant to 28

U.S.C. § 2201 and 2202. Venue Is proper in this District pursuant to 28 U.S.C. § 1391 and 18

U.S.C. § 1965.

## PARTIES

### Plaintiff:

4.    Plaintiff Leonid Lautman resides in the apartment ("Unit") 322 in the multifamily
dwelling ("Building"), known as 2800 Coyle Street, Brooklyn, New York 11235, and owned and
operated by the Defendant 2800 Coyle St. Owners Corp. At all times since December 23, 1993,
Plaintiff was, and still is an owner of 1,070 shares of stock of the Defendant 2800 Coyle St.
Owners Corp. allocated to the Unit 322. A copy of the front of the Plaintiff's stock certificate
allocated to the Unit 322. is attached hereto and incorporated herein as Exhibit "A". As the
owner of the foregoing shares of stock, Plaintiff is also the holder of appurtenant thereto
proprietary leasehold for the Unit 322 ("proprietary lessee" or "tenant-shareholder"), leasing the
Unit 322 from the Defendant 2800 Coyle St. Owners Corp. pursuant to the terms and conditions
of its uniform proprietary lease ("Proprietary Lease"). A copy of the form Proprietary Lease is
attached hereto and incorporated herein as Exhibit "B".

### Defendants:

5.    Defendants 2800 Coyle St. Owners Corp., Board of Directors of 2800 Coyle

Street Owners Corp., Svetlana Marmer, and   are referred to collectively as the "2800 Coyle

Defendants".

6.    Defendant 2800 Coyle St. Owners Corp. ("2800 Coyle") is a domestic

cooperative housing corporation ("co-op"), organized pursuant to the Business Corporation Law

("BCL") and Title 13 NYCRR Part 18 Occupied Cooperatives with its principal place of

business at 2800 Coyle Street, Brooklyn, New York 11235. Defendant 2800 Coyle is a

residential landlord and is regularly engaged in the business of collecting rents and rent arrears

("debts" for purposes of the FDCPA) from its tenant-shareholders ("consumers" for purposes of

the FDCPA) via the mail, telephone, internet, and civil debt collection lawsuits. Defendant 2800 Coyle acts as a "creditor" as defined by the FDCPA, 15 U.S.C. § 1692a(4) when it collects or attempts to collect from its tenant-shareholders the charges and arrears expressly authorized by the Proprietary Lease or permitted by law. However, Defendant 2800 Coyle acts as a "debt collector" as defined by the FDCPA, 15 U.S.C. § 1692a(6) when it collects in bad faith from its tenant-shareholders the charges and arrears in default unauthorized by the Proprietary Lease or prohibited by law.

7.      Defendant Board of Directors of 2800 Coyle Street Owners Corp. ("2800 Coyle board") is the highest supervisory body in charge of all affairs of the Defendant 2800 Coyle. Defendant 2800 Coyle board is regularly engaged in the business of collecting rents and rent arrears ("debts" for purposes of the FDCPA) from its tenant-shareholders ("consumers" for purposes of the FDCPA) via the mail, telephone, internet, and civil debt collection lawsuits. Defendant 2800 Coyle acts as a "creditor" as defined by the FDCPA, 15 U.S.C. § 1692a(4) when it collects or attempts to collect from its tenant-shareholders the charges and arrears expressly authorized by the Proprietary Lease or permitted by law. However, Defendant 2800 Coyle acts as a "debt collector" as defined by the FDCPA, 15 U.S.C. § 1692a(6) when it collects in bad faith from its tenant-shareholders the charges and arrears in default unauthorized by the Proprietary Lease or prohibited by law.

8.      Defendant Svetlana Marmer ("Marmer") is a natural person who resides in the Unit 210 in the Building. Defendant Marmer is the tenant-shareholder of the Unit 210. Since June 2008, Defendant Marmer has occupied the offices of the Defendant 2800 Coyle's director and officer holding the position of the President of the 2800 Coyle's Board Of Directors ("Board"). Pursuant to Article III of the 2800 Coyle's By-laws ("By-laws"), Defendant Marmer,

3

as the President of the Board ("President"), has "general management of the affairs of the Corporation", and regularly collects, directly or indirectly, rents, rent arrears and other consumer debts alleged to be due to Defendant 2800 Coyle via the mail, telephone, internet, and civil debt collection lawsuits. Defendant Marmer acts as a "debt collector" as defined by the FDCPA, 15 U.S.C. § 1692a(6) when she collects in bad faith from its tenant-shareholders the charges and arrears in default unauthorized by the Proprietary Lease or prohibited by law.

9.    Defendant Alla Shvarts ("Shvarts") is a natural person who resides in the Unit 417 in the Building. Defendant Shvarts is the tenant-shareholder of the Unit 417. Since July 19, 2012, Defendant Shvarts occupies the offices of the Defendant 2800 Coyle's director and officer holding the position of the Vice-President. In this position, Defendant Shvarts regularly assists Defendant Marmer in collecting, directly or indirectly, rents, rent arrears and other consumer debts alleged to be due to Defendant 2800 Coyle by communicating the demands for payment thereof to the tenant-shareholders via the mail, telephone, and internet. Defendant Shvarts acts as a "debt collector" as defined by the FDCPA, 15 U.S.C. § 1692a(6) when she collects in bad faith from its tenant-shareholders the charges and arrears in default unauthorized by the Proprietary Lease or prohibited by law.

10.    Defendants Sauchik Law Group, P.C., Alec Sauchik, Esq., and Steve Polyakov Esq., are referred to collectively as the "Sauchik Defendants".

11.    Defendant Sauchik Law Group, P.C. ("Sauchik Law Group") is a New York professional corporation with its principal place of business at 9712 Third Avenue, Brooklyn, New York 11209. Defendant Sauchik Law Group is a law firm and is regularly engaged in the business of collecting consumer debts alleged to be due to another via the mail, telephone, internet, and civil debt collection lawsuits, on behalf of its clients, including but not limited to

4

Defendant 2800 Coyle. Defendant Sauchik Law Group's regular business is debt collection. It is a "debt collector" as defined by the FDCPA, 15 U.S.C. § 1692a(6).

12.     Defendant Alec Sauchik, Esq., ("Sauchik") is a natural person, and the Senior Member and Manager of Defendant Sauchik Law Group. Defendant Sauchik regularly collects, directly or indirectly, consumer debts alleged to be due to another via the mail, telephone, internet, and civil debt collection lawsuits. Defendant Sauchik is a "debt collector" as defined by the FDCPA, 15 U.S.C. § 1692a(6).

13.     Defendant  Steve  Polyakov Esq., ("Polyakov")] is a natural person who is employed by Defendant Sauchik Law Group. Defendant Polyakov regularly collects, directly or indirectly, consumer debts alleged to be due to another via the mail, telephone, internet, and civil debt collection lawsuits. Defendant Polyakov is a "debt collector" as defined by the FDCPA, 15 U.S.C. § 1692a(6).

## Time Frame of the Allegations Set Forth in this Complaint

14.     The time frame of the allegations set forth in this Complaint ("Violation Period") is the period from March 5, 2013 through present.

## Overview of the Plaintiff's Allegations Against The Defendants

15.     On March 5, 2013, the 2800 Coyle Defendants and Sauchik Defendants filed the rent collection nonpayment petition against Plaintiff, dated January 15, 2013, at the Housing Part of the Kings County Civil Court. This nonpayment petition ("Verified Petition") was docketed as 2800 Coyle Street Owners Corp. v. Lautman, INDEX NO. 061121/2013 (Civ Ct Kings Co.) The Verified Petition was fabricated by the Sauchik Defendants, and was indorsed and verified by

Defendant Sauchik. A copy of the Verified Petition is attached hereto and incorporated herein as Exhibit "C".

16.    On March 21, 2013, Sauchik Defendants caused the service of the Verified Petition upon Plaintiff by the conspicuous service, to wit, by posting this petition on the front door of the Plaintiff's Unit 322, and mailing it to Plaintiff at the said address via first class and certified mail.

17.    By delivering the Verified Petition to Plaintiff, supra, the 2800 Coyle Defendants and Sauchik Defendants committed, among others, the violations of the 15 U.S.C. §§ 1692f(1), 1692e(2)(A), 1692e(5) and 1692e(10) in that these Defendants attempted to illegally collect charges and arrears prohibited by law, and made false and misleading representations to the Court and Plaintiff about the character, amount and legal status of the set forth therein charges and arrears, and about the company Dom Management, Ltd as purportedly registered with the Department of Housing Preservation and Development of The City of New York ("HPD"). pursuant to The Administrative Code of the City of New York ("ADC") § 27-2097 et seq. as the Defendant 2800 Coyle's managing agent, when, in fact, Defendant Marmer was registered with the HPD as such agent.

18.    The fabricated Verified Petition contained no less than seven (7) deliberate material misrepresentations intended to deceive the Court and Plaintiff, which included, inter alia: overstating purported sum of rent due by Respondent on or about January 15, 2013 by $3,024.96 in contravention of the Plaintiff's rent bills; misrepresenting purported service of the purported predicate rent demand upon Plaintiff as made by the "personal delivery" which contravened the filed affidavits of service; misrepresenting the DOM Management, Ltd. as registered with the HPD on the Defendant 2800 Coyle's Multiple Dwelling Registration

Statement; misrepresenting the content of the predicate rent demand attached to the Verified Petition; misrepresenting in the Defendant Sauchik's Affidavit of Verification affirmed on January 15, 2013, and attached to the Verified Petition, the Defendant Sauchik Law Group's office location as purportedly being in a different county than the Defendant 2800 Coyle's office; etc.

19.     On or about April 23, 2013, Defendant 2800 Coyle's Board committed the violation of the 15 U.S.C. §§ 1692c(b), 1692d(3), 1692e(2)(A), 1692e(7), 1692e(8), and 1692e(10) by fabricating and publishing to the tenant-shareholders by unknown means the list of the purportedly delinquent tenant-shareholders, which list set forth therein the Plaintiff's name and his purported arrears, without obtaining his prior consent or the permission of a court, and by which list these Defendants attempted to illegally collect charges and arrears prohibited by law; and made false and misleading representations to the tenant-shareholders and the public at large about the character, amount and legal status of the set forth therein Plaintiff's purported arrears. A copy of the published by the 2800 Coyle's Board list of purportedly delinquent tenant-shareholders containing Plaintiff's name is attached hereto and incorporated herein as Exhibit "D".

20.     On May 9, 2013, during the parties' court appearance Defendant Polyakov attempted to improperly amend the falsified Sauchik's Affidavit of Verification, supra, by serving on Plaintiff in court the proposed three (3) pages amendment to the Verified Petition. This purported amendment consisted of a copy of the last page of the Verified Petition, with still attached thereto falsified Sauchik's Affidavit of Verification, supra, and with added thereto falsified Defendant Marmer's Affidavit of Verification, purportedly sworn on March 4, 2013,

7

which was notarized by attorney Sauchik. After serving this purported amendment on Plaintiff, Defendant Polyakov, however, failed to file this purported amendment with the court.

21.     On August 24, 2013, Plaintiff served by mail upon Defendant Sauchik Law Group his motion to dismiss the Verified Petition on the grounds of falsity ("08-24-2013 Lautman's Motion"), supported by the Affidavit of Leonid Lautman with numerous exhibits, sworn on August 24, 2013 ("08-24-2013 Lautman's Affidavit"). The 08-24-2013 Lautman's Affidavit clearly demonstrated the total falsity of the Verified Petition fabricated by the Sauchik Defendants.

22.     On August 26, 2013, the 08-24-2013 Lautman's Motion was also served on Defendant Sauchik in court, and was filed with the court together with the proof of service by mail, supra.

23.     The 08-24-2013 Lautman's Motion was never answered by Sauchik Defendants. Moreover, this motion was never heard on the merits by the court, which improperly declined to assert the jurisdiction over this motion, due to purportedly impending trial in the said matter, which trial, in fact, was not calendared, but was commenced nonetheless.

24.     Plaintiff realleges and incorporates herein by reference the 08-24-2013 Lautman's Motion, supra, including the 08-24-2013 Lautman's Affidavit with the Exhibits "A" through "Q" attached thereto as though fully set forth herein.

25.     On September 16, 2013, a default judgment was entered against Plaintiff, due to his newly retained attorney arriving late in court. Upon such default Defendant Sauchik requested and obtained from the Court the improper default judgment of possession together with the improper monetary judgment in the sum of $45,955.75 which sum was misrepresented by Defendant Sauchik to the Court as being due and owing by Plaintiff.

26. The foregoing default judgment has been stayed by the Court pending appeal based on the large undertaking deposited by Plaintiff with the court.

27. To summarize, the Defendants improperly instituted and prosecuted the collection lawsuit against Plaintiff by deceit and illegality, namely, by means of the multiple material misrepresentations in their papers, and in brazen violation of the Multiple Dwelling Law § 325(2), which bars a multiple dwelling owner who fails to comply with the registration requirements of ADC § 27-2097 et seq., supra, such as the 2800 Coyle Defendants herein, from recovering any uncollected rent for complete period of such violation.

28. As the result of the Defendants above described deceitful tortious conduct Plaintiff suffered the economic injury, including, inter alia, the large legal and associated costs, as well as non-economic injury in the form of the continuing severe emotional distress, including, inter alia, the mental anguish caused by his receipt of multiple improper eviction notices and impending loss of his home and his investment.

### FIRST CAUSE OF ACTION
#### (FDCPA 15 U.S.C. § 1692 et. seq. Against All Defendants)

29. Plaintiff hereby restates, realleges, and incorporates by reference all preceding paragraphs with the same force and effect as if herein set forth.

30. Defendants violated the 15 U.S.C. §§ 1692c(b), 1692d(3), 1692e(2)(A), 1692e(5), 1692e(7), 1692e(8), 1692e(10) and 1692f(1) by making false and misleading representations, and engaging in unfair and abusive practices. Defendants violations include. but are not limited to:

(A) Instituting and prosecuting against Plaintiff summary nonpayment proceeding 2800 Coyle Street Owners Corp. v. Lautman, INDEX NO. 061121/2013 (Civ Ct Kings Co.) that could not legally be instituted pursuant to the pertinent New York law;

9

(B)   Communicating to third parties without authorization the information about Plaintiff's purported arrears;

(C)   Making to third parties false representations about Plaintiff's purported arrears;

(D)   Engaging in conduct the natural consequence of which was to harass, oppress, or abuse Plaintiff.

31.   As a direct and proximate result of Defendants violations of the FDCPA Plaintiff has sustained actual damages in an amount to be proved at trial and is also entitled to statutory damages and attorneys fees if any.

## SECOND CAUSE OF ACTION
### (NY GBL § 349 Against All Defendants)

32.   Plaintiff hereby restates, realleges, and incorporates by reference all preceding paragraphs with the same force and effect as if herein set forth.

33.   New York prohibits deceptive acts or practices in the conduct of any business, trade or commerce or in the furnishing of any service in this state. N.Y. Gen. Bus. Law § 349(a).

34.   As enumerated above, Defendants violated § 349 of the New York General Business Law by using deceptive acts and practices in the conduct of their businesses.

35.   Defendants' conduct has a broad impact on consumers at large.

36.   Defendants committed the above-described acts willfully and/or knowingly.

37.   As a direct and proximate result of these violations of § 349 of the New York General Business Law Plaintiff has suffered compensable harm and is entitled to preliminary and permanent injunctive relief, and to recover actual and treble damages, costs and attorney's fees if any.

## THIRD CAUSE OF ACTION

## (NY Jud. Law § 487 Against Sauchik Defendants)

38.     Plaintiff hereby restates, realleges, and incorporates by reference all preceding paragraphs with the same force and effect as if herein set forth.

39.     New York law states that "an attorney or counsel who ... is guilty of any deceit or collusion, or consents to any deceit or collusion, with intent to deceive the court or any party ..., [i]s guilty of misdemeanor, and in addition to the punishment prescribed therefor by the penal law ... forfeits to the party injured treble damages, to be recovered in a civil action" NY. Jud. Law § 487(1).

40.     As enumerated above. the Sauchik Defendants violated § 487 of the New York Judiciary Law by engaging in deceit or collusion, or consenting to deceit or collusion, with the intention to deceive courts and opposing parties.

41.     The Sauchik Defendants committed the above-described acts willfully and/or knowingly.

42.     The Sauchik Defendants' wrongful and deceptive acts have caused injury and damages to Plaintiff.

43.     The Sauchik Defendants' violations of § 487 of the New York Judiciary Law include, but are not limited to:

A.      Preparing fraudulent, deceptive, and misleading affidavits and affirmations;

B.      Using fraudulent, deceptive and misleading affidavits and affirmations intended toward obtaining improper judgment against Plaintiff under false pretenses;

C.      Fraudulently obtaining the default judgment against Plaintiff in the improper sum in order to extract money from Plaintiff.

44.     As a direct and proximate result of these violations of § 487 of the New York Judiciary Law by the Sauchik Defendants, Plaintiff has suffered compensable harm and is entitled to recover actual and treble damages.

## FOURTH CAUSE OF ACTION
### (Malicious Prosecution Against All Defendants)

45.     Plaintiff hereby restates, realleges, and incorporates by reference all preceding paragraphs with the same force and effect as if herein set forth.

46.     Defendants maliciously instituted summary nonpayment proceeding 2800 Coyle Street Owners Corp. v. Lautman, INDEX NO. 061121/2013 (Civ Ct Kings Co.) against Plaintiff "without probable cause for doing so which finally ends in failure." Curiano v. Suozzi, 63 NY2d 113, 118 (1984).

47.     As a direct and proximate result of the malicious prosecution by these Defendants Plaintiff has suffered compensable harm, including the large totally unwarranted legal and associated costs, and multiple eviction notices. Plaintiff demands judgment against these Defendants for nominal, actual, special, compensatory and exemplary damages, in an amount deemed at time of trial to be just, fair, and appropriate.

## FIFTH CAUSE OF ACTION
### (For Libel Against 2800 Coyle Defendants)

48.     Plaintiff hereby restates, realleges, and incorporates by reference all preceding paragraphs with the same force and effect as if herein set forth.

49.     The 2800 Coyle Defendants' malicious publication of Plaintiff's purported arrears to the tenant-shareholders clearly exposed Plaintiff to hatred, contempt, ridicule and obloquy because it falsely accused and depicted Plaintiff as, among other things, being irresponsible and delinquent tenant-shareholder.

12

50.    The 2800 Coyle Defendants, and each of them, jointly or individually, wrote, printed, published and circulated, and/or caused to be written, printed, published and circulated, and/or caused to be written, printed, published and circulated, the foregoing libelous statements concerning Plaintiff either with knowledge of the falsity of said statements or with reckless disregard for the truth, and for the purpose of, among other things, publicly embarrassing and humiliating Plaintiff. The untruthful statements were therefore made with actual malice, with the knowledge that each such statement was false and was published with reckless disregard of their truthfulness.

51.    The foregoing defamatory statements were intended by the 2800 Coyle Defendants, and each of them, to directly injure Plaintiff with respect to his reputation, character and business.

52.    As a legal result of the 2800 Coyle Defendants' publication of the foregoing false statements, Plaintiff has suffered loss of reputation, shame and mortification, and severe emotional distress.

53.    Plaintiff demands judgment against  the 2800 Coyle Defendants for nominal, actual, special, compensatory and exemplary damages, in an amount deemed at time of trial to be just, fair, and appropriate.

WHEREFORE, Plaintiff demands judgment against the named Defendant(s) for nominal, actual, special, compensatory and exemplary damages, in an amount deemed at time of trial to be just, fair, and appropriate; and for punitive and treble damages in consideration of the heedless, wanton, and oppressive, malicious, and fraudulent conduct that these Defendants have perpetrated on Plaintiff during the Violation Period, supra.

13

Plaintiff also demands judgment against the named Defendant(s) for attorney fees if any, costs of this suit, and such other relief as the Court deems proper, equitable and just.

## DEMAND FOR TRIAL BY JURY

Plaintiff Lautman hereby demands trial by jury, pursuant to Fed. R. Civ. P. 38(b), for all issues so triable.

I declare under penalty of perjury that the foregoing is true and correct.

Dated: March 21, 2014

_Leonid Lautman_

Leonid Lautman, Plaintiff pro se
2800 Coyle Street Apt. 322
Brooklyn, NY 11235
Tel.: (347) 628-3099

14

# EXHIBIT _A_



EXHIBIT _B_

## PROPRIETARY LEASE

Proprietary Lease, made as of _____, 198___, by and between 2800 Coyle St. Owners Corp., a New York corporation, having an office at 2800 Coyle Street, Brooklyn, New York, hereinafter called the Lessor, and

hereinafter called Lessee.

Whereas, the Lessor is the owner of the land and the building erected thereon in the County of Kings, City and State of New York, known as and by the street numbers 2800 Coyle Street, Brooklyn, New York hereinafter collectively called the "Building"; and

Whereas, the Lessee is the owner of _____ shares of the Lessor, to which this Lease is appurtenant and which have been allocated to Apartment _____ in the Building;

### DEMISED PREMISES; TERM

Now, therefore, in consideration of the premises, the Lessor hereby leases to the Lessee, and the Lessee hires from the Lessor, subject to the terms and conditions hereof, Apartment in the Building (hereinafter referred to as the "Apartment") for a term from _____, 19___, until December 31, 2035 (unless sooner terminated as hereinafter provided). As used herein "the Apartment" means the rooms in the Building as partitioned on the date of the execution of this lease designated by the above-stated apartment number, together with their appurtenances and fixtures and any closets, terraces, balconies, roof, or portion thereof outside of said partitioned rooms, which are allocated exclusively to the occupant of the Apartment.

### RENT (MAINTENANCE) HOW FIXED

1.     (a)     The rent (sometimes called maintenance) payable by the Lessee for each year, or portion of a year, during the term shall equal the proportion of the Lessor's cash requirements for such year, or portion of a year, which the number of shares of Lessor allocated to the Apartment bears to the total number of shares of the Lessor issued and outstanding on the date of the determination of such cash requirements. Such maintenance shall be payable in equal monthly installments in advance on the first day of each month, unless the Board of Directors of the Lessor (sometimes hereinafter called Directors) at the time of its determination of the cash requirements shall otherwise direct. Lessee shall also pay Lessee's pro rata share (determined in the same manner as maintenance) of any special maintenance charge that may be levied by Lessor from time to time to pay for any repair, alteration, or improvement to the corporate property, or any deficit from operations for a prior period, or other cash requirements. Such special maintenance charge shall be deemed additional rent and shall be payable in a lump sum or in periodic installments, as the Directors shall determine. The Lessee shall also pay such additional rent as may be provided for herein when due.

Accompanying Shares to Be Specified in Proprietary Leases

(b)     In every Proprietary Lease heretofore executed by the Lessor there has been specified, and in every Proprietary Lease hereafter executed by it there will be specified, the number of shares of the Lessor issued to a lessee simultaneously therewith, which number, in relation to the total number of shares of the Lessor issued and outstanding, shall constitute the basis for fixing, as hereinbefore provided, the proportionate share of the Lessor's cash requirements which shall be payable as rent by the Lessee.

Cash Requirements Defined

(c)     "Cash Requirements" whenever used herein shall mean the estimated amount in cash which the Directors shall from time to time in its judgment determine to be necessary or proper for (1) the operation, maintenance, care, alteration and improvement of the corporate property during the year or portion of the year for which such determination is made; (2) the creation of such reserve for contingencies, repairs, replacements and general operations as it may deem proper, and (3) the payment of any obligations, liabilities or expenses incurred or to be incurred, after giving consideration to (i) income expected to be received during such period (other than rent from proprietary lessees), and (ii) cash on hand which the Directors in its discretion may choose to apply. The Directors may from time to time modify its prior determination and increase or diminish the amount previously determined as Cash Requirements of the corporation for a year or portion thereof. No determination of Cash Requirements shall have any retroactive effect on the amount of the rent payable by the Lessee for any period prior to the date of such determination. All determinations of cash requirements shall be conclusive as to all Lessees.

Authority Limited to Board of Directors

(d)     Whenever in this paragraph or any other paragraph of this Lease, a power or privilege is given to the Directors, the same may be exercised only by the Directors, and in no event may any such power or privilege be exercised by a creditor, receiver or trustee.

Issuance of Additional Shares

(e)     If the Lessor shall hereafter issue shares (whether now or hereafter authorized) in addition to those issued on the date of the execution of this lease, the holders of the shares hereafter issued shall be obligated to pay rent at the same rate as the other proprietary lessees from and after the date of issuance. If any such shares be issued on a date other than the first or last day of the month, the rent for the month in which issued shall be apportioned. The Cash Requirements as last determined shall, upon the issuance of such shares, be deemed increased by an amount equal to such rent.

Paid-In-Surplus

(f)     The Directors may, from time to time as may be proper, determine how much of the maintenance and other receipts, when received, shall be credited on the corporate accounts to ""Paid-in-Surplus" (but not more than such amount as represents payments on account of principal of mortgages on the property and other capital expenditures). Unless the Directors shall determine otherwise, the amount of payments on account of principal of any mortgages shall be credited to Paid-In-Surplus.

-2-

Failure to Fix Cash Requirements

(g)   The failure of the Directors to determine the Lessor's cash requirements for any year or portion thereof shall not be deemed a waiver or modification in any respect of the covenants and provisions hereof, or a release of the Lessee from the obligation to pay the maintenance or any installment thereof, but the maintenance computed on the basis of the cash requirements as last determined for any year or portion thereof shall thereafter continue to be the maintenance until a new determination of cash requirements shall be made.

LESSOR'S REPAIRS

2.   The Lessor shall at its expense keep in good repair all of the Building including all of the apartments, the sidewalks and courts surrounding the same, and its equipment and apparatus except those portions the maintenance and repair of which are expressly stated to be the responsibility of the Lessee pursuant to Paragraph 18 hereof.

SERVICES BY LESSOR

3.   The Lessor shall maintain and manage the Building as a first class apartment building, and shall keep the elevators and the public halls, cellars and stairways clean and properly lighted and heated, and shall provide the number of attendants requisite, in the judgment of the Directors, for the proper care and service of the Building, and shall provide the Apartment with a proper and sufficient supply of hot and cold water and of heat, and if there be central air—conditioning equipment supplied by the Lessor, air conditioning when deemed appropriate by the Directors. The covenants by the Lessor herein contained are subject, however, to the discretionary power of the Directors to determine from time to time what services and what attendants shall be proper and the manner of maintaining and operating the Building, and also what existing services shall be increased, reduced, changed, modified or terminated.

DAMAGE TO APARTMENT OR BUILDING

4.   (a)   If the Apartment or the means of access thereto or the Building shall be damaged by fire or other cause covered by multiperil policies commonly carried by cooperative corporations in New York City (any other damage to be repaired by Lessor or Lessee pursuant to Paragraphs 2 and 18, as the case may be), the Lessor shall at its own cost and expense, with reasonable dispatch afterreceipt of notice of said damage, repair or replace or cause to be repaired or replaced, with materials of a kind and quality then customary in buildings of the type of the Building, the Apartment, and the means of access thereto, including the walls, floors, ceilings, pipes, wiring and conduits in the Apartment. Anything in this Paragraph 2 to the contrary notwithstanding, Lessor shall not be required to repair or replace, or cause to be repaired or replaced, equipment, fixtures, furniture, furnishings or decorations installed by the Lessee or any of his predecessors in title nor shall the Lessor be obligated to repaint or replace wallpaper or other decorations in the Apartment or to refinish floors located therein.

Rent Abatement

(b)   In case of the damage resulting from fire or other cause shall be so extensive as to render the Apartment partly or wholly untenantable, or if the means of access thereto shall be destroyed, the rent hereunder shall proportionately abate

until the Apartment shall again be rendered wholly tenantable or the means of access restored; but if said damage shall be caused by the act or negligence of the Lessee or the agents, employees, guests or members of the family of the Lessee or any occupant of the Apartment, such rental shall abate only to the extent of the rental value insurance, if any, collected by Lessor with respect to the Apartment.

Expiration of Lease Due to Damage

(c) If the Directors shall determine that (i) the Building is totally destroyed by fire or other cause, or (ii) the Building is so damaged that it cannot be repaired within a reasonable time after the loss shall have been adjusted with the insurance carriers, or (iii) the destruction or damage was caused by hazards which are not covered under the Lessor's insurance policies then in effect, and if in any such case the record holders of at least two-thirds of the issued shares at a shareholders' meeting duly called for that purpose held within one hundred twenty (120) days after the determination by the Directors, shall vote not to repair, restore or rebuild, then upon the giving of notice pursuant to Paragraph 31 hereof, this Lease and all other Proprietary Leases and all right, title and interest of the parties thereunder and the tenancies thereby created, shall thereupon wholly cease and expire and rent shall be paid to the date of such destruction or damage. The Lessee hereby waives any and all rights under Section 227 of the Real Property Law and in no event shall the Lessee have any option or right to terminate this Lease, except as provided herein.

Waiver of Subrogation

(d) Lessor agrees to use its best efforts to obtain a provision in all insurance policies carried by it waiving the right of subrogation against the Lessee; and, to the extent that any loss or damage is covered by the Lessor by any insurance policies which contain such waiver of subrogation, the Lessor releases the Lessee from any liability with respect to such loss or damage. In the event that Lessee suffers loss or damage for which Lessor would be liable, and Lessee carries insurance which covers such loss or damage and such insurance policy or policies contain a waiver of subrogation against the Landlord, then in such event Lessee releases Lessor from any liability with respect to such loss or damage.

## INSPECTION OF BOOKS OF ACCOUNT-ANNUAL REPORT

5. The Lessor shall keep full and correct books of account at its principal office or at such other place as the Directors may from time to time determine, and the same shall be open during all reasonable hours to inspection by the Lessee or a representative of the Lessee. The Lessor shall deliver to the Lessee within reasonable time after the end of each fiscal year an annual report of corporate financial affairs, including a balance sheet and statement of income and expenses, certified by an independent certified public accountant.

## CHANGES IN TERMS AND CONDITIONS OF PROPRIETARY LEASES

6. Each proprietary lease shall be in the form of this Lease, unless a variation of any lease is authorized by Lessees owning at least two-thirds (2/3rds) of the Lessor's shares then issued and executed by the Lessor and Lessee affected.

-4-

-197-

The form and provisions of all the proprietary leases then in effect and thereafter to be executed may be changed by the approval of Lessees owning at least seventy-five (75%) percent of the Lessor's shares then issued, and such changes shall be binding on all Lessees even if they did not vote for such changes except that the proportionate share of rent or cash requirements payable by any lessee may not be increased nor may his right to cancel the Lease under the conditions set forth in Paragraph 35 be eliminated or impaired without his express consent nor may the provisions of Paragraph 52 be changed or eliminated. Approval by Lessees as provided for herein shall be evidenced by written consent or by affirmative vote taken at a meeting called for such purpose. Notwithstanding the foregoing, in no event shall any change in the form of proprietary lease and any of the provisions thereof be made which shall adversely affect certain rights granted to the Secured Party (its successors or assigns) as set forth in Paragraph 17(b) below, unless the Secured Party affected thereby shall have agreed to each such change.

PENTHOUSE, TERRACES AND BALCONIES

7.     If the Apartment includes a terrace, balcony, or a portion of the roof adjoining a penthouse, the Lessee shall have and enjoy the exclusive use of the terrace or balcony or that portion of the roof appurtenant to the penthouse, subject to the applicable provisions of this Lease and to the use of the terrace, balcony or roof by the Lessor to the extent herein permitted. The Lessee's use thereof shall be subject to such regulations as may, from time to time, be prescribed by the Directors. The Lessor shall have the right to erect equipment on the roof, including radio and television aerials and antennas, for its use and the use of the Lessees in the Building and shall have the right of access thereto for such installations and for the repair thereof. The Lessee shall keep the terrace, balcony or portion of the roof appurtenant to his Apartment clean and free from snow, ice, leaves and other debris and shall maintain all screens and drain boxes in good condition. No planting, fences, structures or lattices shall be erected or installed on the terraces, balconies, or roof of the Building without the prior written approval of the Lessor. No cooking shall be permitted on any terraces, balconies or the roof of the Building, nor shall the walls thereof be painted by the Lessee without the pior written approval of the Lessor. Any planting or other structures erected by the Lessee or his predecessor in interest may be removed and restored by the Lessor at the expense of the Lessee for the purpose of repairs, upkeep or maintenance of the Building.

ASSIGNMENT OF LESSOR'S RIGHTS AGAINST OCCUPANT

8.     If at the date of the commencement of this Lease, any third party shall be in possession or have the right to possession of the Apartment, then the Lessor hereby assigns to the Lessee all of the Lessor's rights against said third party from and after the date of the commencement of the term hereof, and the Lessee by the execution hereof assumes all of the Lessor's obligations to said third party from said date. The Lessor agrees to cooperate with the Lessee, but at the Lessee's expense, in the enforcement of the Lessee's rights against said third party.

CANCELLATION OF PRIOR AGREEMENTS

9.     If at the date of the commencement of this Lease, the Lessee has the right to possession of the Apartment under any agreement or statutory tenancy, this Lease shall supersede such agreement or statutory tenancy which shall be of no further effect after the date of commencement of this Lease, except for claims theretofore arising thereunder.

-5-

## QUIET ENJOYMENT

10. The Lessee, upon paying the rent and performing the covenants and complying with the conditions on the part of the Lessee to be performed as herein set forth, shall, at all times during the term hereby granted, quietly have, hold and enjoy the Apartment without any let, suit, trouble or hindrance from the Lessor, subject, however, to the rights of present tenants or occupants of the Apartment, and subject to any and all mortgages and any underlying or overriding lease or ground lease (any such leases being hereinafter collectively called "Ground Lease") of the land and Building, as provided in Paragraph 22 below.

## INDEMNITY

11. The Lessee agrees to save the Lessor harmless from all liability, or property occasioned by the failure of the Lessee to comply with any provision hereof, or due wholly or in part to any act, default or omission of the Lessee or of any person dwelling or visiting in the Apartment, or by the Lessor, its agents, servants or contractors when acting as agent for the Lessee as in this Lease provided. This Paragraph shall not apply to any loss or damage when Lessor is covered by insurance which provides for waiver of subrogation against the Lessee.

## PAYMENT OF RENT

12. The Lessee will pay the rent to the Lessor upon the terms and at the times herein provided, without any deduction on account of any set-off or claim which the Lessee may have against the Lessor. A late charge or five (5¢) cents for each one ($1.00) dollar overdue for more than ten (10) days will be charged to any Lessee who shall fail to pay any installment of rent timely and/or interest thereon at a rate to be fixed from time to time by the Board of Directors of Lessor (but not to exceed the then legal rate) for the period from the date when such rent was due to the date paid. In addition, the Board of Directors of Lessor has the right to access a charge for a "dishonored check" from Lessee. Any such interest and other charges shall be deemed additional rent hereunder.

## HOUSE RULES

13. The Lessor has adopted House Rules which are appended hereto, and the Directors may alter, amend or repeal such House Rules and adopt new House Rules. This Lease shall be in all respects subject to such House Rules which, when a copy thereof has been furnished to the Lessee, shall be taken to be part hereof, and the Lessee hereby covenants to comply with all such House Rules and see that they are faithfully observed by the family, guests, employees and subtenants of the Lessee. Breach of a House Rule shall be a default under this Lease. The Lessor shall not be responsible to the Lessee for the non-observance or violation of House Rules by any other lessee or person.

## USE OF PREMISES

14. The Lessee shall not, without the written consent of the Lessor on such conditions as Lessor may prescribe, occupy or use the Apartment or permit the same or any part hereof to be occupied or used for any purpose other than as a private dwelling for the Lessee and Lessee's spouse or one living companion, their children, grandchildren, parents, grandparents, brothers and sisters and domestic employees, and in no event shall more than one married couple occupy the Apartment without the written consent of the Lessor. In the case of a Lessee who is a corporation, partnership, trust, estate, fiduciary or other non-individual, the

-6-

apartment may be occupied as a residence only by (i) an individual who is related to such Lessee as an officer, director, stockholder, principal, beneficiary or employee and (ii) members of such individual's immediate family. In addition to the foregoing, the Apartment may be occupied from time to time by guests of the Lessee for a period of time not exceeding one month, unless a longer period is approved in writing by the Lessor, but no guests may occupy the Apartment unless one or more of the permitted adult residents are then in occupancy or unless consented to in writing by the Lessor. Notwithstanding the foregoing, Lessee may use the Apartment for any home occupation use permitted under applicable zoning law, building code or other rules and regulations of governmental authorities having jurisdiction.

## SUBLETTING

15.    Except as provided in Paragraph 17(b) of this Lease, the Lessee shall not sublet the whole or any part of the Apartment or renew or extend any previously authorized sublease, unless consent thereto shall have been duly aurthorized by a resolution of the Directors, or given in writing by a majority of the Directors or, if the Directors shall have failed or refused to give such consent, then by Lessees owning at least sixty-five (65%) percent of the then issued shares of the Lessor. Consent by Lessees as provided for herein shall be evidenced by written consent or by affirmative vote taken at a meeting called for such purpose. Any consent to subletting may be subject to such conditions as the Directors or Lessees, as the case may be, may impose. There shall be no limitation on the right of Directors or Lessees to grant or withhold consent, for any reason or for no reason, to a subletting. No consent to a subletting shall operate to release the Lessee from any obligation hereunder.

## ASSIGNMENT

16.    (a)    The Lessee shall not assign this Lease or transfer the shares to which it is appurtenant or any interest therein, and no such assignment or transfer shall take effect as against the Lessor for any purpose; until

(i)    An instrument of assignment in form approved by Lessor executed and acknowledged by the assignor shall be delivered to the Lessor; and

(ii)    An agreement executed and acknowledged by the assignee in form approved by Lessor assuming and agreeing to be bound by all the covenants and conditions of this Lease to be performed or complied with by the Lessee on and after the effective date of said assignment shall have been delivered to the Lessor, or, at the request of the Lessor, the assignee shall have surrendered the assigned lease and entered into a new lease in the same form for the remainder of the term, in which case the Lessee's Lease shall be deemed cancelled as of the effective date of said assignment; and

(iii)    All shares of the Lessor to which this Lease is appurtenant shall have been transferred to the assignee, with proper transfer taxes paid and stamps affixed; and

(iv)    All sums due from the Lessee shall have been paid to the Lessor, together with a sum to be fixed by the Directors to cover reasonable legal and other expenses of the Lessor and its managing agent in connection with such assignment and transfer of shares (subject to Paragraph 17(b) hereof); and

-7-

(v)    A search or certification from a title or abstract company as the Directors may require shall be delivered to Lessor; and

(vi)   Except in the case of an assignment, transfer or bequest of the shares and this Lease to the Lessee's spouse or adult siblings or adult children or parents, and except as otherwise provided in Paragraph 17(b) of this Lease, consent to such assignment shall have been authorized by resolution of the Directors, or given in writing by a majority of the Directors; or, if the Directors shall have failed or refused to give such consent within thirty (30) days after submission of references to them or Lessor's agent, then by Lessees owning of record at least sixty-five (65%) percent of the then issued shares of the Lessor.  Consent by Lessees as provided for herein shall be evidenced by written consent or by affirmative vote taken at a meeting called for such purpose in the manner as provided in the by-laws.

Consents: On Death of Lessee

(b)    If the Lessee shall die, consent shall not be unreasonably withheld to an assignment of the Lease and shares to a financially responsible member of the Lessee's family (other than the Lessee's spouse, adult siblings or adult children or parents as to whom no consent is required).

Consents Generally: Stockholders' and Directors' Obligations to Consent

(c)    There shall be no limitation, except as above specifically provided, on the right of Directors or Lessees to grant or withhold consent, for any reason or for no reason, to an assignment.

Release of Lessee Upon Assignment

(d)    If the Lease shall be assigned in compliance herewith, the Lessee-assignor shall have no further liability on any of the covenants of this Lease to be thereafter performed.

Further Assignment or Subletting

(e)    Regardless of any prior consent theretofore given, neither the Lessee nor his executor, nor administrator, nor any trustee or receiver of the property of the Lessee, nor anyone to whom the interests of the Lessee shall pass by law, shall be entitled further to assign this Lease, or to sublet the Apartment, or any part thereof, except upon compliance with the requirements of this Lease.

Statement by Lessor

(f)    If this Lease is then in force and effect, Lessor will, upon request of Lessee, deliver to the assignee a written statement that this Lease remains on the date thereof in force and effect; but no such statement shall be deemed an admission that there is no default under the Lease.

-8-

EXHIBIT 12
-201-

PLEDGE OF SHARES AND LEASE

17.    (a)    A pledge of this Lease and the shares to which it is appurtenant shall not be a violation of this Lease; but, except as otherwise provided elsewhere herein, neither the pledgee nor any transferee of the pledged security shall be entitled to have the shares transferred of record on the books of the Lessor, nor to vote such shares, nor to occupy or permit the occupancy by others of the Apartment, nor to sell such shares or this Lease, without first obtaining the consent of the Lessor in accordance with and after complying with all of the provisions of Paragraphs 14, 15 or 16, as the case may be. The acceptance by Lessor of payments by the pledgee or any transferee of the pledged security on account of rent or additional rent shall not institute a waiver of the aforesaid provisions.

Secured Party

(b)    Notwithstanding the provisions of subparagraph (a) of this Paragraph 17 or any other provision of this Lease to the contrary, the following provisions of this Paragraph shall govern and be binding.

(i)    The Lessor agrees that it shall give to any holder of a security interest in the shares of the Lessor specified in the recitals of this Lease or mortgagee of this Lease who so requests (any such holder being hereinafter referred to as a "Secured Party"), a copy of any notice of default which the Lessor gives to the Lessee pursuant to the terms of this Lease, and if the Lessee shall fail to cure the default specified in such notice within the time and in the manner provided for in this Lease, then the Secured Party shall have an additional period of time, equal to the time originally given to the Lessee, to cure said default for the account of the Lessee or to cause same to be cured, and the Lessor will not act upon said default unless and until the time in which the Secured Party may cure said default or cause same to be cured as aforesaid, shall have elapsed, and the default shall not have been cured.

(ii)    If this Lease is terminated by the Lessor as provided in Paragraph 31 or 35 of this Lease, or by agreement with the Lessee, (l) the Lessor promptly shall give notice of such termination to the Secured Party and (2) upon request of the Secured Party made within thirty (30) days of the giving of such notice the Lessor (i) shall commence and prosecute a summary dissossess proceeding to obtain possession of the Apartment at the expense of the Secured Party, and (ii) shall, within sixty (60) days of its receipt of the aforesaid request by the Secured Party, reissue the aforementioned shares to, and (with respect to any termination other than under Paragraph 36 below) shall enter into a new proprietary lease for the apartment with, any individual designated by the Secured Party, or the individual nominee of the individual so designated by the Secured Party, all without the consent of the Directors or the shareholders to which reference is made in Paragraph 16(a)(vi) and 32(c) but with the consent only of the Lessor's then managing agent which shall not be

unreasonably withheld or delayed, provided, however, that the Lessor shall have received payment, on behalf of the Lessee, of all rent, additional rent and other sums owed by the Lessee to the Lessor under this lease for the period ending on the date of reissuance of the aforementioned shares of the Lessor including, without limitation, sums owed under Paragraphs 32(a) and (c) of this Lease.

(iii)  If the purchase by the Lessee of the shares allocated to the Apartment was financed by a loan made by (a) Sponsor under the Plan of cooperative organization of Lessor or individual(s) produced by Sponsor, or by a holder of Unsold Shares, or (b) a bank, savings bank or savings and loan association and a default or an event of default shall have occurred under the terms of the security agreement–leasehold mortgage or either of them entered into between the Lessee and the Secured Party, and if (1) notice of said default or event of default shall have been given to the Lessor, (2) an individual designated by the Secured Party, or the individual nominee of the individual so designated by the Secured Party, shall be entitled to become the owner of the shares and the Lessee under this Lease pursuant to the terms of said security agreement–leasehold mortgage, or either of them, (3) not less than five (5) days' written notice of an intended transfer of the shares and this Lease shall have been given to the Lessor and the Lessee, (4) there has been paid, on behalf of the Lessee, all rent, additional rent and other sums owed by the Lessee to the Lessor under this Lease for the period ending on the date of transfer of the aforementioned shares as hereinafter provided, and (5) the Lessor shall be furnished with such affidavits, certificates, and opinions of counsel, in the form and substance reasonably satisfactory to the Lessor, indicating that the foregoing conditions (1) through (4) have been met, then (a) a tranfer of the shares and the Proprietary Lease shall be made to such individual, upon request, and without the consent of the Directors or the shareholders to which reference is made in Paragraph 16(a)(vi) but with the consent only of the Lessor's then managing agent which shall not be unreasonably withheld or delayed.

(iv)  Without the prior written consent of any Secured Party who has requested a copy of any notice of default as hereinbefore provided in subparagraph (b)(i) of this Paragraph 17, (a) the Lessor and the Lessee will not enter into any agreement modifying or cancelling this Lease, (b) no change in the forms terms or conditions of this Lease, as permitted by Paragraph 6, shall eliminate or modify any rights, privileges or obligations of a Secured Party as set forth in this Paragraph 17, (c) the Lessor will not terminate or accept a surrender of this Lease, except as provided in Paragraph 31 or 35 of this lease and in subparagraph (b)(i) of Paragraph 17, (d) the Lessee will not assign this lease or sublet the Apartment,

-10-

(e) any modification, cancellation, surrender, termination or assignment of this Lease or any sublease of the Apartment not made in accordance with the provisions hereof shall be void and of no effect, (f) the Lessor will not consent to any further mortgage on this Lease or security interest created in the shares, (g) the Lessee will not make any further mortgage or create any further security interest in the shares or this Lease, and (h) any such further mortgage or security interest shall be void and of no effect.

(v)    Any designee of a Secured Party to whom a transfer of a lease shall have been made pursuant to the terms of this subparagraph (b) hereof may cancel this Lease under the terms of Paragraph 35 hereof; except that such designee (a) may cancel this Lease at any time after the designee acquires this Lease and the shares appurtenant hereto due to foreclosure of the security agreement- leasehold mortgage; (b) need give only thirty (30) days' notice of its intention to cancel; and (c) may give such notice at any time during the calendar year.

(vi)    A Secured Party claiming or exercising any of the rights and privileges granted it pursuant to the provisions of this subparagraph (b) shall be deemed to have agreed to indemnify Lessor for all loss, liability or expense (including reasonable attorneys' fees) arising out of claims by Lessee, or his successors or assigns, against Lessor or the Secured Party, or their respective successors or assigns, for acts or omissions to act on the part of either Lessor or Secured Party, or their respective successors or assigns, pursuant to this subparagraph (b). Lessor will give the Secured Party written notice with reasonable promptness of any such claim against Lessor and the Secured Party may contest such claim in the name and on behalf of Lessor with counsel selected by the Secured Party at the Secured Party's sole expense. Lessor shall execute such papers and do such things as are reasonably necessary to implement the provisions of this subpart (vi).

(vii)    Upon Lessee's final payment under the loan given by the Secured Party or upon prepayment of said loan, Secured Party will give Lessor notice of such final payment or prepayment (as the case may be).

(viii)    If requested by Lessee, Lessor will enter into an agreement (commonly known as a "Recognition Agreement") with a Secured Party, such Recognition Agreement to be in the form approved by the Cooperative Housing Lawyers group or such other form approved by Lessor.

EXHIBIT

REPAIRS BY THE LESSEE

    18.    (a)    The Lessee shall take possession of the Apartment and its appurtenances and fixtures "as is" as of the commencement of the term hereof. Subject to the provisions of Paragraph 4 above, the Lessee shall keep the interior of the Apartment (including interior walls, floors and ceilings, but excluding windows, window panes, window frames, sashes, sills, entrance and terrace doors, frames and saddles) in good repair, shall do all of the painting and decorating required to his Apartment, including the interior of window frames, sashes and sills, and shall be solely responsible for the maintenance, repair, and replacement of plumbing, gas and heating fixtures and equipment and such refrigerators, dishwashers, removal and through-the-wall air conditioners, washing machines, ranges and other appliances, as may be in the Apartment. Plumbing, gas and heating fixtures as used herein shall include exposed gas, steam and water pipes attached to fixtures, appliances and equipment and the fixtures, appliances and equipment to which they are attached, and any special pipes or equipment which the Lessee may install within the wall or ceiling, or under the floor, but shall not include gas, steam, water or other pipes or conduits within the walls, ceilings or floors or air conditioning or heating equipment which is part of the standard building equipment. The Lessee shall be solely responsible for the maintenance, repair and replacement of all lighting and electrical fixtures, appliances, and equipment, and all meters, fuse boxes or circuit breakers and electrical wiring and conduits from the junction box at the riser into and through the Lessee's Apartment. Any ventilator or air conditioning device which shall be visible from the outside of the Building shall at all times be painted by the Lessee in a standard color which the Lessor may select for the Building.

Odors and Noises

    (b)    The Lessee shall not permit unreasonable cooking or other odors to escape into the Building. The Lessee shall not permit or suffer any unreasonable noises or anything which will interfere with the rights of other lessees or unreasonably annoy them or obstruct the public halls or stairways.

Equipment and Appliances

    (c)    If, in the Lessor's sole judgment, any of the Lessee's equipment or appliances shall result in damage to the Building or poor quality or interruption of service to other portions of the Building, or overloading of, or damage to facilities maintained by the Lessor for the supplying of water, gas, electricity or air conditioning to the Building, or if any such applianceas visible from the outside of the Building shall become rusty or discolored, the Lessee shall promptly, on notice from the Lessor, remedy the condition and, pending such remedy, shall cease using any appliance or equipment which may be creating the objectionable condition.

Rules and Regulations and Requirements of Mortgage

    (d)    The Lessee will comply with all the requirements of the Board of Fire Underwriters, insurance authorities and all governmental authorities and with all laws, ordinances, rules and regulations with respect to the occupancy or use of the Apartment. If any mortgage or Ground Lease affecting the land or the Building shall contain any provisions pertaining to the right of the Lessee to make changes or alterations in the Apartment, or to remove any, of the fixtures,

appliances, equipment of installations, the Lessee herein shall comply with the requirements of such mortgage or mortgages and Ground Lease relating thereto. Upon the Lessee's written request, Lessor will furnish Lessee with copies of applicable provisions of each and every such mortgage.

## LESSOR'S RIGHT TO REMEDY LESSEE'S DEFAULTS

19.    If the Lessee shall fail for thirty (30) days after notice to make repairs to any part of the Apartment, its fixtures or equipment as herein required, or shall fail to remedy a condition which has become objectionable to the Lessor for reasons above set forth, or if the Lessee or any person dwelling in the Apartment shall request the Lessor, its agents or servants to perform any act not hereby required to be performed by the Lessor, the Lessor may make such repairs, or arrange for others to do the same, or remove such objectionable condition or equipment, or perform such act, without liability on the Lessor; provided that, if the condition requires prompt action, notice of less than thirty (30) days may be given or, in case of emergency, no notice need be given. In all such cases the Lessor, its agents, servants and contractors shall, as between the Lessor and Lessee, be conclusively deemed to be acting as agents of the Lessee and all contracts therefor made by the Lessor shall be so construed whether or not made in the name of the Lessee. If Lessee shall fail to perform or comply with any of the other covenants or provisions of this lease within the time required by a notice from Lessor (not less than five (5) days), then Lessor may, but shall not be obligated, to comply herewith, and for such purpose may enter upon the Apartment of Lessee. The Lessor shall be entitled to recover from the Lessee all expenses incurred or for which it has contracted hereunder, such expenses to be payable by the Lessee on demand as additional rent.

## INCREASE IN RATE OF FIRE INSURANCE

20.    The Lessee shall not permit or suffer anything to be done or kept in the Apartment which will increase the rate of fire insurance on the Building or the contents thereof. If, by reason of the occupancy or use of the Apartment by the Lessee, the rate of fire insurance on the Building or an Apartment or the contents of either shall be increased, the Lessee shall (if such occupancy or use continues for more than thirty (30) days after written notice from the Lessor specifying the objectionable occupancy or use) become personally liable for the additional insurance premiums incurred by Lessor or any lessee or lessees of Apartments in the Building on all policies so affected, and the Lessor shall have the right to collect the same for its benefit or the benefit of any such lessees as additional rent for the Apartment due on the first day of the calendar month following written demand therefor by the Lessor.

## ALTERATIONS

21.    (a)    The Lessee shall not, without first obtaining the written consent of the Lessor, which consent shall not be unreasonably withheld or delayed, make in the Apartment or Building, or on any roof, penthouse, terrace or balcony appurtenant thereto, any alteration, enclosure or addition or any alteration of or addition to the water, gas or steam risers or pipes, heating or air conditioning system or units, electrical conduits, wiring or outlets, plumbing fixtures, intercommunication or alarm system, or any other installation or facility in the Apartment or Building. The performance by Lessee of any work in the Apartment shall be in accordance with any applicable rules and regulations of the Lessor and governmental agencies having jurisdiction thereof. The Lessee shall not in any case install any appliances which will overload the existing wires or equipment in the Building.

EXHIBIT

Removal of Fixtures

    (b)    Without Lessor's written consent, the Lessee shall not remove any fixtures, appliances, additions or improvements from the Apartment except as hereinafter provided. If the Lessee, or a prior lessee, shall have heretofore placed, or the Lessee shall hereafter place in the Apartment, at the Lessee's own expense, any additions, improvements, appliances or fixtures, including but not limited to fireplace mantels, lighting fixtures, refrigerators, air conditioners, dishwashers, washing machines, ranges, woodwork, wall paneling, ceilings, special doors or decorations, special cabinet work, special stair railings or other built-in ornamental items, which can be removed without structural alterations or permanent damage to the Apartment, then title thereto shall remain in the Lessee and the Lessee shall have the right, prior to the termination of this lease, to remove the same at the Lessee's own expense, provided: (i) that the Lessee at the time of such removal shall not be in default in the payment of rent or in the performance or observance of any other covenants or conditions of this lease; (ii) that the Lessee shall, at the Lessee's own expense, prior to the termination of this lease, repair all damage to the Apartment which shall have been caused by either the installation or removal of any of such additions, improvements, appliances or fixtures; (iii) that if the Lessee shall have removed from the Apartment any articles or materials owned by the Lessor or its predecessor in title, or any fixtures or equipment necessary for the use of the Apartment, the Lessee shall either restore such articles and materials and fixtures and equipment and repair any damage resulting from their removal and restoration, or replace them with others of a kind and quality customary in comparable buildings and satisfactory to the Lessor; (iv) that if any mortgagee had acquired a lien on any such property prior to the execution of this lease, Lessor shall first procure from such mortgagee its written consent to such removal, and any cost and expense incurred by the Lessor in respect thereof shall have been paid by the Lessee; and (v) that prior to any such removal, the Lessee shall give written notice thereof to the Lessor.

Surrender on Expiration of Term

    (c)    On the expiration or termination of this Lease, the Lessee shall surrender to the Lessor possession of the Apartment with all additions, improvements, appliances and fixtures then included therein, except as hereinabove provided. Any additions, improvements, fixtures or appliances not removed by the Lessee on or before such expiration or termination of this lease shall, at the option of the Lessor, be deemed abandoned and shall become the property of the Lessor and may be disposed of by the Lessor without liability or accountability to the Lessee. Any other personal property not removed by the Lessee at or prior to the termination of this lease may be removed by the Lessor to any place of storage and stored for the account of the Lessee without the Lessor in any way being liable to trespass, conversion or negligence by reason of any acts of the Lessor or of the Lessor's agents, or of any carrier employed in transporting such property to the place of storage, or by reason of the negligence of any person in caring for such property while in storage.

-14-

EXHIBIT 13
-207-

## LEASE SUBORDINATE TO MORTGAGES AND GROUND LEASES

22. This Lease is and shall be subject and subordinate to all present and future Ground Leases and to any mortgages now or hereafter liens upon such leases or on the land and Building, or buildings, and to any and all extensions, modifications, consolidations, renewals and replacements thereof and to all security agreements and chattel mortgages on personal property covered by any Ground Lease or mortgage. This clause shall be self-operative and no further instrument of subordination shall be required by any such mortgagee or ground lessee. In confirmation of such subordination the Lessee shall at any time, and from time to time, on demand, execute any instruments that may be required by any mortgagee, or by the Lessor, for the purpose of more formally subjecting this lease to the lien of any such mortgage or mortgages or Ground Leasees, and the duly elected officers, for the time being, of the Lessor are and each of them is hereby irrevocably appointed the attorney-in-fact and agent of the Lessee to execute the same upon such demand, and the Lessee hereby ratifies any such instrument hereafter executed by virtue of the power of attorney hereby given.

In the event that a Ground Lease is executed and delivered to the holder of a mortgage or mortgages on such Ground Lease or to a nominee or designee of or a corporation formed by or for the benefit of such holder, the Lessee hereunder will attorn to such mortgagee or the nominee or designeee of such mortgagee or to any corporation formed by or for the benefit of such mortgagee.

## MECHANIC'S LIEN

23. In case a notice of mechanic's lien against the Building shall be filed purporting to be for labor or material furnished or delivered at the Building or the Apartment to or for the Lessee, or anyone claiming under the Lessee, the Lessee shall forthwith cause such lien to be discharged by payment, bonding or otherwise; and if the Lessee shall fail to do so within ten (10) days after notice from the Lessor, then the Lessor may cause such lien to be discharged by payment, bonding or otherwise, without investigation as to the validity thereof or of any offsets or defenses thereto, and shall have the right to collect, as additional rent, all amounts so paid and all costs and expenses paid or incurred in connection therewith, including reasonable attorneys' fees and disbursements, together with interest thereon from the time or times of payment.

## COOPERATION

24. The Lessee shall always in good faith endeavor to observe and promote the cooperative purposes for the accomplishment of which the Lessor is incorporated.

## RIGHT OF ENTRY; KEY

25. The Lessor and its agents and their authorized workmen shall be permitted to visit, examine, or enter the Apartment and any storage space assigned to Lessee at any reasonable hour of the day upon notice, or at any time and without notice in case of emergency, to make or facilitate repairs in any part of the Building or to cure any default by the Lessee and to remove such portions of the walls, floors and ceilings of the Apartment and storage space as may be required for any such

-15-

purpose, but the Lessor shall thereafter restore the Apartment and storage space to its proper and usual condition at Lessor's expense if such repairs are the obligation of Lessor or at Lessee's expense if such repairs are the obligation of Lessee or are caused by the act or omission of the Lessee or any of the Lessee's family, guests, agents, employees or subtenants. In order that the Lessor shall at all times have access to the Apartment or storage rooms for the purposes provided for in this Lease, the Lessee shall provide the Lessor with a key to each lock providing access to the Apartment or the storage rooms, and if any lock shall be altered or new lock installed, the Lessee shall provide the Lessor with a key thereto immediately upon installation. If the Lessee shall not be personally present to open and permit an entry at any time when an entry therein shall be necessary or permissible hereunder and shall not have furnished a key to Lessor, the Lessor or the Lessor's agents (but, except in an emergency, only when specifically authorized by an officer of Lessor or an officer of the managing agent of Lessor) may forcibly enter the Apartment or storage space without liability for damages by reason thereof (if during such entry the Lessor shall accord reasonable care to the Lessee's property), and without in any manner affecting the obligations and covenants of this Lease. The right and authority hereby reserved do not impose, nor does the Lessor assume by reason thereof, any responsibility or liability for the care or supervision of the apartment, or any of the pipes, fixtures, appliances or appurtenances therein contained, except as herein specifically provided.

## WAIVERS

26.    The failure of the Lessor to insist, in any one or more instances, upon a strict performance of any of the provisions of this Lease, or to exercise any right or option herein contained, or to serve any notice, or to institute any action or proceeding, shall not be construed as a waiver, or a relinquishment for the future, of any such provisions, options or rights, but such provision, option or right shall continue and remain in full force and effect. The receipt by the Lessor of rent, with knowledge of the breach of any covenant hereof, shall not be deemed a waiver of such breach, and no waiver by the Lessor of any provision hereof shall be deemed to have been made unless in a writing expressly approved by the Directors.

## NOTICES

27.    Any notice by or demand from either party to the other shall be duly given only if in writing and sent by certified or registered mail, return receipt requested: if by the Lessee, addressed to the Lessor at the Building with a copy sent by regular mail to the Lessor's managing agent; if to the Lessee, addressed to the Building. Either party may by notice served in accordance herewith designate a different address for service of such notice or demand. Notices or demands shall be deemed given on the date when mailed, except notices of change of address shall be deemed served when received.

## REIMBURSEMENT OF LESSOR'S EXPENSES

28.    If the Lessee shall at any time be in default hereunder and the Lessor shall incur any expense (whether paid or not) in performing acts which the Lessee is required to perform, or in instituting any action or proceeding based on such default,

EXHIBIT 2

-209-

or defending, or asserting a counterclaim in, any action or proceeding brought by the Lessee, the expense thereof to the Lessor, including reasonable attorneys' fees and disbursements, shall be paid by the Lessee to the Lessor, on demand, as additional rent.

## LESSOR'S IMMUNITIES

29.    (a)    The Lessor shall not be liable, except by reason of Lessor's negligence, for any failure or insufficiency of heat, or of air conditioning (where air conditioning is supplied or air conditioning equipment is maintained by the Lessor), water supply, electric current, gas, telephone, or elevator service or other service to be supplied by the Lessor hereunder, or for interference with light, air, view or other interests of the Lessee. No abatement of rent or other compensation or claim of eviction shall be made or allowed because of the making or failure to make or delay in making any repairs, alterations or decorations to the Building, or any fixtures or appurtenances therein, or for space taken to comply with any law, ordinance or governmental regulation, or for interruption or curtailment of any service agreed to be furnished by the Lessor, due to accidents, alterations or repairs, or to difficulty or delay in securing supplies or labor or other cause beyond Lessor's control, unless due to Lessor's negligence. Nothing contained herein shall be deemed to limit Lessor's obligations (if any) under Section 235b of the Real Property Law.

Storage Space and Laundry

(b)    If the Lessor shall furnish to the Lessee any storage bins or space, the use of the laundry, or any facility outside the Apartment, including but not limited to a televisionantenna, the same shall be deemed to have been furnished gratuitously by the Lessor under a revocable license. The Lessee shall not use such storage space for the storage of valuable or perishable property and any such storage space assigned to Lessee shall be kept by Lessee clean and free of combustibles. If washing machines or other equipment are made available to the Lessee, the Lessee shall use the same on the understanding that such machines or equipment may or may not be in good order and repair and that the Lessor is not responsible for such equipment, nor for any damage caused to the property of the Lessee resulting from the Lessee's use thereof, and that any use that Lessee may make of such equipment shall be at his own cost, risk and expense.

Automobiles and Other Property

(c)    The Lessor shall not be responsible for any damage to any automobile or other vehicle left in the care of any employee of the Lessor by the Lessee, and the Lessee hereby agrees to hold the Lessor harmless from any liability arising from any injury to person or property caused by or with such automobile or other vehicle while in the care of such employee. The Lessor shall not be responsible for any property left with or entrusted to any employee of the Lessor, or for the loss of or damage to any property within or without the Apartment by theft or otherwise.

## WINDOW CLEANING

30.    The Lessee will not require, permit, suffer or allow the cleaning of any    window    in    the    premises    from    the    outside    (within    the    meaning

-17-

of Section 202 of the New York Labor Law) unless the equipment and safety devices required by law, ordinance, rules and regulations, including, without limitation, Section 202 of the New York Labor Law, are provided and used, and unless the industrial code of the State of New York is fully complied with; and the Lessee hereby agrees to indemnify the Lessor and its employees, other lessees, and the managing agent, for all losses, damages or fines suffered by them as a result of the Lessee's requiring, permitting, suffering or allowing any window in the premises to be cleaned from the outside in violation of the requirements of the aforesaid laws, ordinances, regulations and rules.

## TERMINATION OF LEASE BY LESSOR

31.    If upon, or at any time after, the happening of any of the events mentioned in subdivisions (a) to (j) inclusive of this Paragraph 31, the Lessor shall give to the Lessee a notice stating that the term hereof will expire on a date at least five (5) days thereafter, the term of this lease shall expire on the date so fixed in such notice as fully and completely as if it were the date herein definitely fixed for the expiration of the term, and all right, title and interest of the Lessee hereunder shall thereupon wholly cease and expire, and the Lessee shall thereupon quit and surrender the Apartment to the Lessor, it being the intention of the parties hereto to create hereby a conditional limitation, and thereupon the Lessor shall have the right to re-enter the Apartment and to remove all persons and personal property therefrom, either by summary dispossess proceedings, or by any suitable action or proceeding at law or in equity, or by force or otherwise, and to repossess the Apartment in its former estate as if this Lease had not been made, and no liability whatsoever shall attach to the Lessor by reason of the exercise of the right of re-entry, possession and removal herein granted and reserved:

Lessee Ceasing to Own Accompanying Shares

(a)    If the Lessee shall cease to be the owner of the shares to which this Lease is appurtenant, or if this lease shall pass or be assigned to anyone who is not then the owner of all of said shares;

Lessee Becoming a Bankrupt

(b)    If at any time during the term of this Lease (i) the then holder hereof shall be adjudicated a bankrupt under the laws of the United States; or (ii) a receiver of all of the property of such holder or of this Lease shall be appointed under any provision of the laws of the State of New York, or under any statute of the United States, or any statute of any state of the United States and the order appointing such receiver shall not be vacated within thirty (30) days; or (iii) such holder shall make a general assignment for the benefit of creditors; or (iv) any of the shares owned by such holder to which this lease is appurtenant shall be duly levied upon under the process of any court whatever unless such levy shall be discharged within thirty (30) days; or (v) this lease or any of the shares to which it is appurtenant shall pass by operation of law or otherwise to anyone other than the Lessee herein named or a person to whom such Lessee has assigned this Lease in the manner herein permitted, but this subsection (v) shall not be applicable if this Lease shall devolve upon the executors or administrators of the Lessee and provided that within eight (8) months (which period may be extended by the Directors) after the

-18-

death said Lease and shares shall have been transferred to any assignee in accordance with Paragraph 16 hereof; or (vi) this lease or any of the shares to which it is appurtenant shall pass to anyone other than the Lessee herein named by reason of a default by the Lessee under a pledge or security agreement or a leasehold mortgage made by the Lessee;

Assignment, Subletting or Unauthorized Occupancy

(c)    If there be an assignment of this Lease, or any subletting hereunder, without full compliance with the requirements of Paragraphs 15 or 16 hereof; or if any person not authorized by Paragraph 14 shall be permitted to use or occupy the Apartment, and the Lessee shall fail to cause such unauthorized person to vacate the Apartment within ten (10) days after written notice from the Lessor;

Default in Rent

(d)    If the Lessee shall be in default for a period of ten (10) days in the payment of any rent or additional rent or of any installment thereof and shall fail to cure such default within ten (10) days after written notice from the Lessor;

Default in Other Covenants

(e)    If the Lessee shall be in default in the performance of any covenant or provision hereof, other than the covenant to pay rent, and such default shall continue for thirty (30) days after written notice from the Lessor; provided, however, that if said default consists of the failure to perform any act the performance of which requires any substantial period of time, then if within said period of thirty (30) days such performance is commenced and thereafter diligently prosecuted to conclusion without delay and interruption, the Lessee shall be deemed to have cured said default;

Lessee's Objectionable Conduct

(f)    If at any time the Lessor shall determine, upon the affirmative vote of two-thirds (2/3rds) of its then Board of Directors, at a meeting duly called for that purose, that because of objectionable conduct on the part of the Lessee, or of a person dwelling or visiting in the Apartment, repeated after written notice from Lessor, the tenancy of the Lessee is undesirable (it being understood, without limiting the generality of the foregoing, that repeatedly to voilate or disregard the House Rules hereto attached or hereafter established in accordance with the provisions of this lease, or to permit or tolerate a person of dissolute, loose or immoral character to enter or remain in the Building or the Apartment, shall be deemed to be objectionable conduct);

Termination of All Proprietary Leases

(g)    If at any time the Lessor shall determine, upon the affirmative vote of two-thirds (2/3rds) of its then Board of Directors at a meeting of such Directors duly called for that purpose, and the affirmative vote of the record holders of at least eighty (80%) percent in amount of its then issued shares, at a shareholders' meeting duly called for that purpose, to terminate all proprietary leases;

Destruction of Building

      (h)    If the Building shall be destroyed or damaged and the shareholders shall decide not to repair or rebuild as provided in Paragraph 4;

Condemnation

      i)    If at any time the Building or a substantial portion thereof shall be taken by condemnation proceedings;

Lessee's Default Under Security Agreement

      (j)    If Lessee shall default in payment or performance of any of Lessee's obligations under any pledge or other security agreement (the "Security Agreement") given a Secured Party (who has complied with the provisions of said Paragraph 17(b), and written notice of such default is given to Lessor by the Secured Party or its counsel.

## LESSOR'S RIGHTS AFTER LESSEE'S DEFAULT

      32.    (a)    In the event the Lessor resumes possession of the Apartment, either by summary proceedings, action of ejectment or otherwise, because of default by the Lessee in the payment of any rent or additional rent due hereunder, or on the expiration of the term pursuant to a notice given as provided in Paragraph 31 hereof upon the happening of any event specified in subsections (a) to (f) inclusive or (j) of Paragraph 31, Lessee shall continue to remain liable for payment of a sum equal to the rent which would have become due hereunder and shall pay the same in installments at the time such rent would be due hereunder.  No suit brought to recover any installment of such rent or additional rent shall prejudice the right of the Lessor to recover any subsequent installment.  After resuming possession, the Lessor may, at its option, from time to time (i) relet the Apartment for its own account, or (ii) relet the Apartment as the agent of the Lessee, in the name of the Lessee or in its own name, for a term or terms which may be less than or greater than the period which would otherwise have constituted the balance of the term of this Lease, and may grant concessions or free rent, in its discretion.  Any reletting of the Apartment shall be deemed for the account of the Lessee, unless within ten (10) days after such reletting the Lessor shall notify the Lessee that the premises have been relet for the Lessor's own account.  The fact that the Lessor may have relet the Apartment as agent for the Lessee shall not prevent the Lessor from thereafter notifying the Lessee that it proposes to relet the Apartment for its own account.  If the Lessor relets the Apartment as agent for the Lessee, it shall after reimbursing itself for its expenses in connection therewith, including leasing commissions and reasonable amount for attorneys' fees and expenses, and decorations, alterations and repairs in and to the Apartment, apply the remaining avails of such reletting against the Lessee's continuing obligations hereunder.  There shall be a final accounting between the Lessor and the Lessee upon the earliest of the four following dates: (A) the date of expiration of the term of this Lease as stated on page 1 hereof; (B) the date as of which new proprietary lease covering the Apartment shall have become effective; (C) the date the Lessor gives written notice to the Lessee that it has relet the Apartment for its own account; (D) the date upon which all proprietary leases of the Lessor terminate.  From and after the date upon which the Lessor becomes obligated to account to the Lessee, as above

EXHIBIT 

-213-

provided, the Lessor shall have no further duty to account to the Lessee for any avails of reletting and the Lessee shall have no further liability for sums thereafter accruing hereunder, but such termination of the Lessee's liability shall not affect any liabilities theretofore accrued.

Collection of Rent from Subtenants

  (b) If the Lessee shall at any time sublet the Apartment and shall default in the payment of any rent or additional rent, the Lessor may, at its option, so long as such default shall continue, demand and receive from the subtenant the rent due or becoming due from such subtenant to the Lessee, and apply the amount to pay sums due and to become due from the Lessee to the Lessor. Any payment by a subtenant to the Lessor shall constitute a discharge of the obligation of such subtenant to the Lessee, to the extent of the amount so paid. The acceptance of rent from any subtenant shall not be deemed consent to or approval of any subletting or assignment by the Lessee, or a release or discharge of any of the obligations of the Lessee hereunder.

Sale of Shares

  (c) Upon the termination of this lease under the provisions of subdivision (a) to (f) inclusive or (j) of Paragraph 31, the Lessee shall surrender to the corporation the certificate for the shares of the corporation owned by the Lessee to which this lease is appurtenant. Whether or not said certificate is surrendered, the Lessor may issue a new proprietary lease for the Apartment and issue a new certificate for the shares of the Lessor owned by the Lessee and allocated to the Apartment when a purchaser therefor is obtained, provided that the issuance of such shares and such lease to such purchaser is authorized by a resolution of the Directors, or by a writing signed by a majority of the Directors or by Lessees owning, of record, at least a majority of the shares of the Lessor's accompanying proprietary leases then in force. Upon such issuance, the certificate owned or held by the Lessee shall be automatically cancelled and rendered null and void. The Lessor shall apply the proceeds received for the issuance of such shares first, towards the payment of Lessee's indebtedness hereunder (including interest, attorneys' fees and other expenses incurred by the Lessor); second, if said termination shall result pursuant to subdivision (j) of Paragraph 31 by reason of a default under the Security Agreement, towards the payment of Lessee's indebtedness under the Security Agreement (including all costs, expenses and charges payable by Lessee thereunder); and, third, if the proceeds are sufficient to pay the same, the Lessor shall pay over any surplus to the Lessee, but, if insufficient, the Lessee shall remain liable for the balance of the indebtedness due hereunder or (if applicable) under said Security Agreement. Upon the issuance of any such new proprietary lease and certificate, the Lessee's liability hereunder shall cease and the Lessee shall only be liable for rent and expenses accrued to that time. The Lessor shall not, however, be obligated to sell such shares and appurtenant lease or otherwise make any attempt to mitigate damages.

## WAIVER OF RIGHT OF REDEMPTION

  33. The Lessee hereby expressly waives any and all right of redemption in case the Lessee shall be disposed by judgment or warrant of any court or judge. The words "enter", "re-enter" and "re-entry" as used in this Lease are not restricted to their technical legal meaning.

-214-

## SURRENDER OF POSSESSION

34. Upon the termination of this Lease under the provisions of subdivisions (a) to (f) inclusive or (j) of Paragraph 31, the Lessee shall remain liable as provided in Paragraph 32 of this Lease. Upon the termination of this Lease under any other of its provisions, the Lessee shall be and remain liable to pay all rent, additional rent and other charges due or accrued and to perform all covenants and agreements of the Lessee up to the date of such termination. On or before any such termination the Lessee shall vacate the Apartment and surrender possession thereof to the Lessor or its assigns, and upon demand of the Lessor or its assigns, shall execute, acknowledge and deliver to the Lessor or its assigns any instrument which may reasonably be required to evidence the surrendering of all estate and interest of the Lessee in the Apartment, or in the Building of which it is a part.

## LESSEE'S OPTION TO CANCEL

35. (a) This Lease may be cancelled by the Lessee on any September 30th after the third anniversary of the consummation of the Plan of cooperative organization pursuant to which proprietary leases were originally issued, upon complying with all the provisions hereinafter set forth. Irrevocable written notice of intention to cancel must be given by the Lessee to the Lessor on or before April 1 in the calendar year in which such cancellation is to occur. At the time of the giving of such notice of intention to cancel there must be deposited with the Lessor by the Lessee:

Deposits Required

(i) the Lessee's counterpart of this Lease with a written assignment in form required by the Lessor, in blank, effective as of August 31 of the year of cancellation, free from all subleases, tenancies, leins, encumbrances, pledges, security interests and other charges whatsoever (except rights of occupancy of third parties existing on the date the Lessor acquires title to the Building);

(ii) the Lessee's certificate for his shares of the Lessor, endorsed in blank for transfer and with all necessary transfer tax stamps affixed and with payment of any transfer taxes due thereon;

(iii) a written statement setting forth in detail those additions, improvements, fixtures or equipment which the Lessee has, under the terms of this Lease, the right to and intends to remove.

Removal of Fixtures; Possession

(b) All additions, improvements, appliances and fixtures which are removable under the terms of this Lease and which are enumerated in the statement made as provided in subdivision (iii) above shall be removed by the Lessee prior to August 31st of the year of cancellation, and on or before said August 31st the Lessee shall deliver possession of the Apartment to the Lessor in good condition with all required equipment, fixtures and appliances installed and in proper operating condition and free from all subleases and tenancies, liens, encumbrances, pledges, security interest and other charges and pay to the Lessor all rent, additional rent and other charges which shall be payable under this Lease up to and including the following September 30th.

-22-

EXHIBIT _B_

-215-

Permission to Show and Occupy Premises

(c)     The Lessor and its agents may show the Apartment to prospective Lessees, contractors and architects at reasonable times after notice of the Lessee's intention to cancel. After August 31st or the earlier vacating of the apartment, the Lessor and its agents, employees and Lessees may enter the Apartment, occupy the same and make such alterations and additions therein as the Lessor may deem necessary or desirable without diminution or abatement of the rent due hereunder.

Effective Date of Cancellation

(d)     If the Lessee is not otherwise in default hereunder and if the Lessee shall have timely complied with all of the provisions of subdivisions (a) and (b) hereof, then this Lease shall be cancelled and all rights, duties and obligations of the parties hereunder shall cease as of the September 30th fixed in said notice, and the shares of Lessor shall become the absolute property of the Lessor, provided, however, that the Lessee shall not be released from any indebtedness owing to the Lessor on said last mentioned date.

Rights on Lessee's Default

(e)     If the Lessee shall give the notice but fail to comply with any of the other provisions of this Paragraph, the Lessor shall have the option at any time prior to September 30th (i) of returning to the Lessee this Lease, the certificate for shares and other documents deposited, and thereupon the Lessee shall be deemed to have withdrawn the notice of intention to cancel this Lease, or (ii) of treating this Lease as cancelled as of the September 30th named in the notice of intention to cancel as the date for the cancellation of such Lease, and bringing such proceedings and actions as it may deem best to enforce the covenants of the Lessee hereinabove contained and to collect from the Lessee the payments which the Lessee is required to make hereunder, together with reasonable attorneys' fees and expenses.

EXTENSION OF OPTION TO CANCEL

36.     (a)     If on April 1st in any year the total number of shares owned by Lessees holding Proprietary Leases, who have given notice pursuant to Paragraph 35 of intention to cancel such Proprietary Leases on September 30th of said year, shall aggregate ten (10%) percent or more of the Lessor's outstanding shares, exclusive of treasury shares, then the Lessor shall, prior to April 30th in such year, give a written notice to the holders of all issued shares of the Lessor, stating the total number of shares then outstanding and in its treasury and the total number of shares owned by Lessees holding Proprietary Leases who have given notice of intention to cancel. In such case the proprietary lessees to whom such notice shall have been given shall have the right to cancel their leases in compliance with the provisions of Paragraph 35 hereof, provided only that written notice of the intention to cancel such leases shall be given on or before July 1st instead of April 1st.

Right of Lessees to Cancel

(b)     If Lessees owning at least eighty (80%) percent of the then issued and outstanding shares of the Lessor shall exercise the option to cancel their Leases in one year, then this and all other Proprietary Leases shall thereupon

-23-

terminate on the September 30th of the year in which such options shall have been exercised, as though every Lessee had exercised such option. In such event none of the Lessees shall be required to surrender his shares to the Lessor and all certificates for shares delivered to the Lessor by those who had, during that year, served notice of intention to cancel their Leases under the provisions hereof, shall be returned to such Lessees.

## CONTINUANCE OF COOPERATIVE MANAGEMENT OF BUILDING AFTER ALL LEASES TERMINATED

37.    No later than thirty (30) days after the termination of all Proprietary Leases, whether by expiration of their terms or otherwise, a special meeting of shareholders of the Lessor shall take place to determine whether (a) to continue to operate the Building as a residential apartment building, (b) to alter, demolish or rebuild the Building or any part thereof, or (c) to sell the Building and liquidate the assets of the Lessor, and the Directors shall carry out the determination made at said meeting of shareholders of the Lessor, and all of the holders of the then issued and outstanding shares of the Lessor shall have such rights as inure to shareholders of corporations having title to real estate.

## FORECLOSURE-RECEIVER OF RENTS

38.    Notwithstanding anything contained in this Lease, if any action shall be instituted to foreclose any mortgage on the land or the Building or the leasehold of the land or Building, the Lessee shall, on demand, pay to the receiver of the rents appointed in such action rent,l if any, owing hereunder on the date of such appointment and shall pay thereafter to such receiver in advance, on the first day of each month during the pendency of such action, as rent hereunder, the rent for the Apartment as last determined and established by the Directors prior to the commencement of said action, and such rent shall be paid during the period of such receivership, whether or not the Directors shall have determined and established the rent payable hereunder for any part of the period during which such receivership may continue. The provisions of this Paragraph are intended for the benefit of present and future mortgagees of the land or the Building or the leasehold of the land or Building and may not be modified or annulled without the prior written consent of any such mortgage holder.

## TO WHOM COVENANTS APPLY

39.    The references herein to the Lessor shall be deemed to include its successors and assigns, and the references herein to the Lessee or to a shareholder of the Lessor shall be deemed to include the executors, administrators, legal representatives, legatees, distributees and assigns of the Lessee or of such shareholder; and the covenants herein contained shall apply to, bind and inure to the benefit of the Lessor and its successors and assigns, and the Lessee and the executors, administrators, legal representatives, legatees, distributees, successors and assigns of the Lessee, except as hereinabove stated.

## WAIVER OF TRIAL BY JURY

40.    To the extent permitted by law, the respective parties hereto shall and they hereby do waive trial by jury in any action, proceeding or counterclaim brought by either of the parties hereto against the other on any matters whatsoever arising out of or in any way connected with this Lease, the Lessee's use or occupancy of the Apartment, or any claim of damage resulting from any act or omission of the parties in any way connected with this Lease or the Apartment.

EXHIBIT _____

-217-

## LESSOR'S ADDITIONAL REMEDIES

41.    In the event of a breach or threatened breach by Lessee of any provision hereof, the Lessee shall have the right of injunction and the right to invoke any remedy at law or in equity, as if re-entry, summary proceedings and other remedies were not herein provided for, and the election of one or more remedies shall not preclude the Lessor from any other remedy.

## LESSEE MORE THAN ONE PERSON

42.    If more than one person is named as Lessee hereunder, the Lessor may require the signatures of all such persons in connection with any notice to be given or action to be taken by the Lessee hereunder, including, without limiting the generality of theforegoing, the surrender or assignment of this Lease, or any request for consent to assignment or subletting. Each person named as Lessee shall be jointly and severally liable for all of the Lessee's obligations hereunder. Any notice by the Lessor to any person named as Lessee shall be sufficient, and shall have the same force and effect, as though given to all persons named as Lessee.

## EFFECT OF PARTIAL INVALIDITY

43.    If any clause or provision herein contained shall be adjudged invalid, the same shall not affect the validity of any other clause or provision of this Lease, or constitute any cause of action in favor of either party as against the other.

## NOTICE TO LESSOR OF DEFAULT

44.    The Lessee may not institute an action or proceeding against the Lessor or defend, or make a counterclaim in any action by the Lessor related to the Lessee's failure to pay rent, if such action, defense or counterclaim is based upon the Lessor's failure to comply with its obligations under this Lease or any law, ordinance or governmental regulation unless such failure shall have continued for thirty (30) days after the giving of written notice thereof by the Lessee to the Lessor.

## UNITY OF SHARES AND LEASE

45.    The shares of the Lessor held by the Lessee and allocated to the Apartment have been acquired and are owned subject to the following conditions agreed upon with the Lessor and with each of the other proprietary lessees for their mutual benefit:

(a)    the shares represented by each certificate are transferable only as an entirety and only in connection with a simultaneous transfer of this Lease, unless transferred pursuant to Article V Section 4 of the By-Laws of the Lessor in connection with the re-grouping of space in one or more Apartments.

(b)    the shares shall not be sold or transferred except to the Lessor or to an assignee of this Lease after compliance with all of the provisions of Paragraph 16 of this Lease relating to assignments.

## CHARGES FOR GAS AND ELECTRICITY

46.    If at any time or times during the terms of this Lease the consumption of gas or electricity, or both, in the Apartment is measured by a meter which also measures consumption outside the Apartment, the

EXHIBIT 2

-218-

Lessor may determine from time to time by resolution of the Board of Directors thereof, the charges, if any, to be paid by the Lessee on account of such consumption of gas or electricity, or both, and any such charges shall be payable monthly in advance or in such payments or installments as shall be required by the Directors, and at such times as shall be provided in such resolution.

Such charges may be determined in the proportion that the number of shares of Lessor allocated to the Apartment bears to all shares of Lessor then issued and outstanding, or in the approximate proportion that the floor area of the Apartment bears to all floor areas measured by such meter, or such other equitable method as may be determined by the Directors.

## NO DISCRIMINATION

47.    The Lessor will not discriminate against any person because of his race, creed, religion, color, national origin, ancestry, sex or other ground proscribed by law when exercising any right reserved to it in this Lease.

## MARGINAL HEADINGS

48.    The marginal headings of the several Paragraphs of this lease shall not be deemed a part of this Lease.

## CHANGES TO BE IN WRITING

49.    The provisions of this Lease cannot be changed orally.

## RIGHTS AND OBLIGATIONS OF HOLDERS OF UNSOLD SHARES

50.    The Lessor has entered into an agreement with the Holder(s) of Unsold Shares (as such term is defined in the Offering Plan) regarding the rights and obligations of the Holder(s) of Unsold Shares all of the terms of which are incorporated by reference herein. Under this agreement, the Holder(s) of Unsold Shares are given additional rights and benefits, and the Lessor is restricted from taking certain actions not reflected in this lease. Said agreement is described in the subsection of the Offering Plan entitled "Unsold Shares" and is appended as an Exhibit to, and incorporated by reference in, the Contract of Exchange by which the Lessor acquired the Property.

## LESSEE'S OBLIGATIONS TO NON-PURCHASING TENANT

51.    In the event the Apartment is occupied by a "non-purchasing tenant" as said term is defined in Section 352-eeee of the General Business Law (the "GBL"), Lessee agrees to the following:

(a)    to forego any right Lessee may have pursuant on the grounds of intended owner occupancy or any other applicable law to evict a tenant who qualified as an "Eligible Senior Citizen" or an "Eligible Disabled Person" (as said terms are defined in the GBL) and to abide by the terms and conditions of the GBL regarding the rights and protections afforded such tenants thereunder. Lessee agrees that such qualified tenant shall (i) continue to have the rights afforded to him under applicable rent laws, as such laws shall remain in effect and (ii) in the event such laws with respect to rentals and continued occupancy are eliminated or become inapplicable after the Plan is

EXHIBIT _B_

-219-

declared effective, shall not be subject to unconscionable rent increases beyond ordinary rentals for comparable apartments during the period of his occupancy. Nothing contained herein shall be construed or prevent Lessee from commencing an eviction proceeding against such tenant for non-payment of rent, illegal use of occupancy of the apartment, refusal of access to the owner or similar breach of such tenant's obligation to Lessee, as landlord.

(b)    Lessee agrees to appoint the managing agent employed by the Lessor as Lessee's agent to provide all services and facilities required by law to be provided to the non-purchasing tenant and to expend such reasonable monies on Lessee's behalf in connection therewith to the extent such services exceed the services which the Lessor is required to provide to tenant-shareholders under this Proprietary Lease and to likewise bind all Lessee's successors and assigns until such time as the non-purchasing tenant vacates the Apartment. In connection therewith, Lessee understands that he will be required to place with the Lessor's managing agent an amount equal to two month's maintenance charge on the Apartment. In the event the managing agent is forced to draw down upon such funds, Lessee agrees that upon written notice from the managing agent, Lessee shall replenish such funds within thirty (30) days.

(c)    Lessee agrees to notify the non-purchasing tenant of his entering into this Proprietary Lease within five (5) days from his acquisition of title to the Apartment.

The provisions of this Paragraph 51 may not be altered or amended.

### FEES FOR PARKING OR APPLIANCES

52.    The Lessor may determine from time to time by resolution of the Board of Directors uniform fees, for the parking spaces, or the use of an air conditioner, washing machine, dryer, dishwasher, apartment alarm system, non-building standard refrigerator, freezer and any other appliance in the apartment. All fees shall be payable monthly in advance or in such payment or installments and at such times as shall be required by resolution of the Board of Directors.

### SENIOR CITIZEN REAL ESTATE TAX EXEMPTION

53.    In the event Lessee or any sub-tenant of Lessee or occupant of the demised premises is a senior citizen and, as a result, the real estate taxes assessed against the Building are reduced by reason of the exemption afforded senior citizens under applicable law, then Lessee's maintenance charges payable to Lessor hereunder during such period of exemption shall be reduced concomitantly by the amount of such reduction in taxes.

EXHIBIT B

-220-

IN WITNESS WHEREOF, the parties have executed this Lease.

Lessor:

2800 COYLE ST. OWNERS CORP.

By:_____
President

Secretary

Lessee:

Witnessed:                                    _____(L.S.)

_____                         _____(L.S.)

-28-

EXHIBIT _C_

**CIVIL COURT OF THE CITY OF NEW YORK**
**COUNTY OF KINGS**

061121

-------------------------------------------------------------- x

2800 COYLE STREET OWNERS CORP.,   : Index No.:

                       *Petitioner,*   : NOTICE OF PETITION

          -against-   : Nonpayment of Dwelling

LEONID LAUTMAN(*Tenant*) & JOHN DOE (*Undertenant*)   :
*whose name being fictitious and unknown to petitioner,*   :

                   *Respondent.*   :

-------------------------------------------------------------- x

To the respondent above named and described, in possession of the premises hereinafter described or claiming possession thereof:

PLEASE TAKE NOTICE that the annexed petition of 2800 Coyle Street Owners Corp. verified the 15th day of January, 2013, prays for a final judgment of eviction, awarding to the Petitioner possession of premises described as Apartment 322 located at 2800 Coyle Street, in the Borough of Brooklyn, City and State of New York.

TAKE NOTICE also that demand is made in the Petition for judgment against you for the sum of $37,011.93, with interest from November 1, 2013.

TAKE NOTICE also that within FIVE (5) DAYS after service of this Notice of Petition upon you, you must answer, either orally before the clerk of this Court at 141 Livingston Street, County of Kings, City and State of New York, or in writing by serving a copy thereof upon the undersigned attorney for the Petitioner, and by filing the original of such answer, with proof of service thereof, in the Office of the Clerk. Your answer may set forth any defense or counterclaim you may have against the Petitioner. On receipt of your answer, the Clerk will fix and give notice of the date for trial or hearing which will be held not less than three (3) nor more than eight (8) days thereafter, at which you must appear. If, after the trial or hearing, judgment is

rendered against you, the issuance of a warrant dispossessing you may, in the discretion of the Court, be stayed for five (5) days from the date of such judgment.

TAKE NOTICE also that if you fail to interpose and establish any defense that you may have to the allegations of the Petition, you may be precluded from asserting such defense or the claim on which it is based in any other proceeding or action.

In the event you fail to answer and appear, final judgment by default will be entered against you, but a warrant dispossessing you will not be issued until the tenth day following the date of the service of this Notice of Petition upon you.

TAKE NOTICE that under Section 745 of the Real Property Actions and Proceedings Law, you may be required by the Court to make a rent deposit, or a rent payment to the petitioner, upon your second request for an adjournment or if the proceeding is not settled or a final determination has not been made by the court within 30 days of the first court appearance. Failure to comply with an initial rent deposit or payment order may result in the entry of a final judgment against you without a trial. Failure to make subsequent required deposits or payments may result in an immediate trial on the issues raised in your answer.

Dated: Brooklyn, New York
      January 15, 2013

CHIEF CLERK

MAR - 5 2013

KINGS COUNTY
CIVIL COURT

Clerk of the Civil Court of the City of New York

ALEC SAUCHIK
*Attorneys for Petitioners*
*2800 Coyle Street Owners Corp.*
9712 Third Avenue
Brooklyn, New York 11209
Tel: (718) 787-9500

CIVIL COURT OF THE CITY OF NEW YORK
COUNTY OF KINGS

**EXHIBIT C**

---------------------------------------------------------------------x

| | |
|---|---|
| 2800 COYLE STREET OWNERS CORP., | : Index No.: |
| | : |
| *Petitioner,* | : L&T |
| | : |
| -against- | : PETITION |
| | : |
| LEONID LAUTMAN(*Tenant*) & JOHN DOE (*Undertenant*) | : Nonpayment of Dwelling |
| *whose name being fictitious and unknown to petitioner,* | : |
| | : |
| *Respondent.* | : |

---------------------------------------------------------------------x

The Petition of 2800 Coyle Street Owners Corp. ("Petitioner" or "Landlord") respectfully alleges that:

1. Petitioner is the proprietary lessee and landlord of the Premises described below (the "Premises").

2. Petitioner is a New York Corporation.

3. Respondent-tenant is the proprietary lessor and tenant of the Premises.

4. Respondent-tenant Leonid Lautman ("Tenant") occupies the Premises pursuant to a Proprietary Lease Agreement between Tenant and the Petitioner, wherein Tenant agreed to pay to Landlord "rent" (as defined in Section 1(a) of the Proprietary Lease) each month in advance on the first day of each month.

5. Tenant entered into possession and continues in possession of the Premises.

6. The Premises from which removal is sought were rented for residential purposes and are described as Apartment 322 located at 2800 Coyle Street, in the Borough of Brooklyn, City and State of New York.

7. Said Premises are situated within the territorial jurisdiction of this Court.

8. Pursuant to the parties' Proprietary Lease Agreement, there was due to the Landlord from

Tenant rent as follows: **Overdue Maintenance Chart**

| 0-30 Days Balance | 31 – 60 Days Balance | 61 – 90 Days Balance | Over 90 Days Balance |
|---|---|---|---|
| $3,164.32 | $3,026.91 | $2,526.10 | $28,294.60 |
| | | | |
| | | **Total** | **$37,011.93** |

9.   Such rent has been demanded by service of a written ten day demand serviced by personal delivery (a copy of which is annexed hereto) from the Tenant since the same became due.

10. Tenant has defaulted in the payment of such rent, pursuant to the agreement under which said Premises are held.

11. Tenant continues in possession of the Premises without Landlord's permission after said default and the demand therefor as aforesaid.

12. The dwelling is not subject to the City Rent and Rehabilitation Law or the Rent Stabilization Law of 1969, as amended, because the dwelling is owned as a cooperative unit and is not occupied by a 'non-purchasing tenant' as defined under section 352-eeee of the General Business Law.

13. The Premises are a multiple dwelling and pursuant to the Administrative Code Article 41 there is a currently effective registration statement on file with the Office of Code enforcement in which the owner has designated the managing agent named below, a natural person over 21 years of age, to be in control of and responsible for the maintenance and operation of the dwelling.

  a.   Multi Dwelling Registration # 372377

  b.   Registered Managing Agent's Name: DOM Management

  c.   Business Address: P.O. Box 604559, Bayside, NY 11360

  d.   Phone#: 718-352-0222

Client Files\509\03\0029115

14. Under the terms of the governing proprietary lease agreement, Petitioner is further entitled to recover from Tenant such costs, disbursements and attorney's fees incurred by the Petitioner, the total amount of such costs and fees to be determined by the Court at a hearing or trial, but believed to equal or exceed the sum of $1,500.

WHEREFORE, Petitioner requests a final judgment awarding Petitioner: (a) possession of the Premises with the issuance of a warrant to remove Tenant from possession of the Premises; (b) a money judgment against the Tenant in the amount of $37,011.93 with interest thereon from November 1, 2012; (c) together with an award of Petitioner's attorney's fees, costs and disbursement in an amount to be determined by the Court but believed to be no less than $1,500, and such other and further relief this Court deems just and proper.

Dated: January 15, 2013

_____
Alec Sauchik, Esq.

## VERIFICATION

EXHIBIT C

STATE OF NEW YORK    )
                     ) ss.:
COUNTY OF NEW YORK   )

ALEC SAUCHIK, being the attorney for the Petitioner herein, herby affirms under the penalties of perjury and pursuant to CPLR 2106 that he has read the foregoing petition and knows the contents thereof, and that upon information and belief, the same are true. The source of your affirmant's information and belief are oral statements, books and records furnished by the Petitioner, its agents and/or employees and material contained in the office files. This affirmation is made pursuant to RPAPKL 741 and CPLR 3020 (c)(3), as the Petitioner is a corporation that maintains its offices in the county different than its attorneys.

Date: New York, New York
      January 15, 2013

_____
Alec Sauchik

SAUCHIK LAW GROUP
*Attorneys for Petitioner-Landlord*
641 Lexington Avenue, 15th Floor
New York, New York 10022
(212) 634-6350

Client Files\509\03\0029174

**BOARD OF DIRECTORS**
**2800 Coyle Street Owners Corp.**
**2800 Coyle Street**
**Brooklyn, NY 11235**
**Tel. # (718) 934-2428**

EXHIBIT C

## TEN DAYS' DEMAND OF THE RENT

To:

Leonid Lautman
2800 Coyle Street,
Apartment 322
Brooklyn, NY 11235

Reference is made to the Proprietary Lease by and between 2800 Coyle Street Owners Corp., as Landlord (hereinafter referred to as "Landlord") and Leonid Lautman, as Tenant (hereinafter referred to as "Tenant"), affecting the premises known as the Apartment 322 located at 2800 Coyle Street, in the Borough of Brooklyn, City and State of New York (hereinafter "premises").

**PLEASE TAKE NOTICE**, that you have defaulted in the observance and performance of your obligation under the above referenced Lease, in that you have failed to pay to the Landlord all "rent" (as defined in Section 1(a) of the Proprietary Lease) in the aggregate sum of twenty six thousand five hundred sixty dollars and fourteen cents ($26,560.14), due as of October 31, 2012, as per the attached statement from the Landlord's managing agent, which sum you are required to pay on or before December 3, 2012, that being more than ten (10) days from the date of the service of this notice, or surrender up the possession of said premises to the Landlord, in default of which Landlord will commence summary proceedings under the relevant statute.

Dated:     Brooklyn, New York
           November 20, 2012

Landlord:

2800 Coyle Street Owners Corp.          2800 Coyle Street Owners Corp.          2800 Coyle Street Owners Corp.

_____                 _____                _____
Svetlana Marmer                         Alla Shvarts                            Ilona Grimberg
President, Board of Directors           Vice President, Board of Directors      Secretary, Board of Directors
2800 Coyle Street Owners, Corp.         2800 Coyle Street Owners, Corp.         2800 Coyle Street Owners, Corp.

cc:    Sauchik Law Group, P.C.
       DOM Management, Ltd.

# 2800 COYLE ST OWNERS CORP.

EXHIBIT D

TO: All Shareholders
RE: Delinquency Report as of 04/23/2013

April 29, 2013

Dear Shareholders,
This is the report of the overdue payments from the shareholders in our COOP. As you can see, the amounts of money that some of the shareholders owe to our COOP is enormous. Our maintenance payments are a major part of our income. This money could be used for improvement of the living conditions in the building and decrease of maintenance fees.

| | |
|---|---|
| 109 - VADIM GERMAN | 25,390.16 |
| 121 - DIANNE SHARROW | 9,716.20 |
| 122 - VASILY & SVE KONONCHUK | 3,037.54 |
| 208 - OREN J. & DAN EISENBAUM | 546.28 |
| 209 - HYMAN & ESTHER SCLAR | 96.00 |
| 218 - TSILIA & IRINA LEOKUMOVICH | 18,097.05 |
| 219 - GENNADIY RAPOPORT | 648.93 |
| 301 - ZINA MELTSINA | 2.00 |
| 314 - PETER AZZARA | 4,962.01 |
| 318 - MALVINA & TAT GURETSKY | 4.62 |
| 319 - ALEXANDRE ZAVIALOV | 10,142.76 |
| 322 - LEONID LAUTMAN | 39,371.85 ← |
| 324 - AYGUL KRAMER | 303.28 |
| 407 - POLINA KLIKSHTEYN | 150.00 |
| 412 - ZANIS & LISNYANSKAYA | 322.98 |
| 414 - FELIX PORTNOV | 12,059.69 |
| 415 - LEV & FAINA VASSERMAN | 275.00 |
| 416 - NATALYA AGRON | 893.77 |
| 419 - LIOUDMILA SHWARTSMAN | 1,432.80 |
| 421 - ALEKSANDR & NATALYA SIROT | 523.16 |
| 425 - MILLA ILCHENKO | 1,335.60 |
| 501 - ALLA & ERIC GALPERIN | 123.83 |
| 505 - JOHN LITMAN/ ELLA GLEIZER | 7,598.04 |
| 508 - AUDLEY E. MORRISON | 512.33 |
| 519 - MALERIE & STEV HOFFMAN | 447.51 |
| 521 - NATALYA & YEVG MOSALEV | 1,782.66 |
| 524 - RUSSEL TRAKHTENBERG /ZLATA GALPERINA | 0.09 |
| 525 - MARK & RAISA KHAZANOV | 6,163.49 |
| 604 - JOHN LITMAN/ ELLA GLEIZER | 6,048.96 |
| 609 - GENRICH & ULYANA YUSIM | 2,288.98 |
| 617 - NINA SHILOVA /VICTOR GUREVICH | 403.39 |
| 621 - DIANE D'AGOSTINO | 2,588.40 |
| 625 - KONSTANTIN BAS | 3,313.11 |
| 707 - YULIA KALIKHMAN | 1,010.64 |
| 716 - GALUSTOV /STEPANIANTS | 140.00 |

**TOTAL**      161,733.11

Only by mutual respect and common efforts we will be able to achieve a lot!

Sincerely,

Board of Directors